No. 34,658

LOREN M. KRUSE, *Petitioner*, v. BERTHA E. KRUSE and NANCY J. GALLAGHER, *Respondents*.

(96 P. 2d 849)

Opinion filed December 9, 1939.

*C. E. Pile,* of Parsons, for the petitioner.

*Charles Stephens* and *Jerome Harman,* both of Columbus, for the respondents.

The opinion of the court was delivered by

ALLEN, J.: This is an original proceeding in habeas corpus to obtain the custody of a minor child.

On January 10, 1928, the circuit court of Henry county, Missouri, granted a decree of divorce in favor of the petitioner, Loren M. Kruse, against the respondent, Bertha E. Kruse. As a part of the divorce proceedings the Missouri court awarded the custody of the child, Lorene Kruse, alternately to each parent for six months of each year. On September 13, 1928, the court modified the original order and gave the custody of the child to the respondent Bertha E. Kruse. Right of visitation was given the petitioner. Shortly after the divorce decree, the mother, Bertha E. Kruse, brought the child, Lorene, to Cherokee county, Kansas. Lorene is now thirteen years of age, and lives in the home of her grandmother, Nancy J. Gallagher, in that county. It does not appear that the child has been in Missouri since she was brought to this state by her mother in 1928.

On September 15, 1939, the circuit court of Henry county, Missouri, entered a decree giving the custody and control of the child to the father, Loren Kruse. The decree recites that the defendant Bertha E. Kruse was "duly served with process issued out of this court," and that defendant by her attorneys filed an application for a continuance in such proceeding.

Petitioner relies on the decree of September 15, 1939, and asserts that under the full faith and credit clause of the federal constitution (art. IV, sec. 1), we are bound to recognize and enforce the decree of the Missouri court.

Did the Missouri court have jurisdiction to award the custody of the child to the father by the decree of September 15, 1939?

In 2 Beale, Conflict of Laws, section 144.3, it is said:

"Since custody of a child by one parent carries with it domicile and a domestic status, jurisdiction to give the child to one parent or the other depends in principle on the domicile of the child; and a state which is the temporary residence of the child, not the domicile, cannot confer the right to custody. *A fortiori,* a decree for custody rendered in a state where the child is neither resident nor domiciled, is void for lack of jurisdiction . . . If after a divorce the party to whom custody was given removes with the child to another state, this would seem to give the second state jurisdiction over the custody,

and put an end to the jurisdiction of the first state; for after the divorce each party may change domicile at will, and the child's domicile changes with that of the parent in whose custody he has been placed. . . ."

In section 147.1 of the same work it is said:

"When the custody of a child has been awarded to one parent by a court having jurisdiction so to do, the right of this parent will be recognized by other states.

"The facts upon which the award was based have become *res judicata,* and cannot be reëxamined in the second state. But this estoppel extends only to conditions which existed at the time of the original decree; the second court may examine any facts which have occurred since the original decree which throw light upon the fitness of the parents to have custody of the child."

The question of jurisdiction in this class of cases received careful consideration in *Wear v. Wear,* 130 Kan. 205, 285 Pac. 606. In that case the wife sued the husband for divorce in Oklahoma. The decree was in favor of the plaintiff and she was given the custody of the minor child. The child was in Kansas on a visit at the time the decree was rendered. The wife brought habeas corpus for custody of the child. In affirming the order of the district court awarding the custody of the child to the mother, it was said: "The trial court correctly held that the contest as presented to the court was one between the father and the mother, and that as between them the matters adjudicated by the Oklahoma court in the divorce case were *res judicata* as to matters determined by the decree in that case, and as of the time it was rendered. The trial court specifically offered to hear evidence as to changed conditions which would authorize or justify a different order with respect to the custody of the child, but, as shown by the entry in the journal, counsel for respondents stated in open court they had no evidence of that character to offer." (p. 225.)

In "The Progress of the Law" by Beale, 34 Harvard Law Review, 50 (1920), it was said:

"In *Groves v. Barto* [109 Wash. 112, 186 Pac. 300], upon a divorce in Colorado the custody of the child had been awarded to the mother. The mother then changed her domicile to Washington, the father assenting. Several months later the father secured a modification of the original decree according to which custody of the child was awarded to him; and then applied to the Washington court to give him possession of the child. This application was refused, on the ground that the change of domicile deprived the Colorado court of any further control over the child. The court also found that the welfare of the child would best be subserved by the mother's custody. The decision may, it would seem, be sufficiently rested on the first ground.

"In *Griffin v. Griffin* [95 Ore. 78, 187 Pac. 598], a California mother, upon a decree of divorce, had been awarded custody of the children; and had been forbidden to remove them from the county without permission. She secured permission to take them to Oregon, on condition she brought them back at a certain time. Instead of returning, she acquired a domicile in Oregon. As a result of her action, the California court modified its decree and awarded custody to the father, who brought *habeas corpus* in Oregon to obtain the children. The court denied the petition upon two grounds: First, that the best interests of the children demanded that they remain with the mother; second, that at the time of the last California decree the children were domiciled in Oregon and the California court no longer had jurisdiction over their status.

"The first ground seems rather questionable. There was no finding unfitness on the part of the petitioner, as in the former case. Has the sovereign within whose territory a minor is found power to award custody of the child away from its otherwise fit parent or domiciliary guardian, merely because he believes the welfare of the child will thereby best be secured? In *Nugent v. Vetzera*, the English court thought not; and sent several children of an English mother, who had been brought up in the English customs and religion, to their Austrian guardian, although the court felt that the welfare of the children would suffer thereby. In cases of temptation an English court has undoubtedly without due consideration acted otherwise. The American courts are somewhat more liberal; but it is doubtful whether the mere supposed 'welfare' of the child would induce any court to remove a child from the custody of a not unfit guardian. A doctrine which would allow the court to do so would be a very dangerous one.

"The second ground, however, seems sound, though it involves novel doctrine. That the California court cannot by its order constrain an adult person, not a wrongdoer, to remain in the state, and cannot prevent his acquiring a new domicile for himself, is certain. But the fact that the mother acquired a new domicile for herself in Oregon does not necessarily mean that the children's domicile also changed, and there is little authority on the point. It is submitted, however, that upon divorce the parent with whom the child actually lives acquires or retains the power over the child's domicile. Whether this suggestion goes too far or not, at any rate it seems clear, as this case decides, that the parent to whom the general custody is awarded obtains this power, and may exercise it even against the order of the court. The court might have put an end to the mother's custody while she remained in California; its power over her and the children ceases when they cease to be there domiciled, and its decree can no longer affect their status." (p. 58.)

In the recent case of *State, ex rel. Larson, v. Larson,* 190 Minn. 489, 252 N. W. 329, the facts were similar to the case at bar. There the parents were domiciled in Iowa. In 1931 the parties were divorced in that state and the decree awarded the custody of the minor child alternately to each parent for six months. Thereafter the mother established her domicile in Minnesota. In accordance with

the decree the child spent six months of each year in Iowa with the father and six months of each year in Minnesota with the mother. In 1933, at the expiration of the third six-months period with the mother, the mother refused to surrender the child to the father. Proceeding in habeas corpus followed. The lower court awarded the custody of the child to the mother, and this decree was affirmed. After a review of the authorities the court stated:

"Applying the above-discussed principles to the case at bar, we conclude that the minor child was domiciled in Minnesota at the time of the commencement of this action. After the Iowa divorce the mother changed her domicile to Minnesota. The minor's domicile is that of the parent to whose custody it has been awarded. So for each of the six-months periods that the mother had the custody the minor's domicile was in Minnesota. When this action was commenced the child had been in Minnesota for a few days over the six-months period, but had not been returned to Iowa. The domicile would not be reëstablished in Iowa until the minor had returned there."

The court held that under the full faith and credit clause of the federal constitution, the court was not bound to recognize and enforce the Iowa decree.

Section 32, Restatement, Conflict of Laws, reads as follows:

"The minor child's domicile, in the case of divorce or judicial separation of its parents, is that of the parent to whose custody it has been legally given; if there has been no legal fixing of custody, its domicile is that of the parent with whom it lives, but if it lives with neither, it retains the father's domicile."

A parent to whom the custody of a child has been awarded often takes the child into another state and there establishes a new domicile. Where such migration occurs and the child has acquired a new domicile, a decree for the custody of the child in a state where the child is neither resident nor domiciled, is void for lack of jurisdiction.

In the case before us the child has been in the custody of her mother, living at the home of her grandmother in Kansas since 1928. The petitioner alleges that the mother is not a fit person for the custody of the child.

From the return to the writ by respondents, it appears that the child has a comfortable home with her grandmother; that she is well cared for and is happy. The father has married a second wife and has another child. Under the original decree the father was required to pay $15 per month toward the support of the child. No payments have been made. The father has neither written to nor visited the child during the eleven years she has been in Kansas.

Under these changed conditions the welfare of the child is of paramount importance. (*Woodall v. Alexander*, 107 Kan. 632, 193 Pac. 185, and cases cited.)

We are requested to appoint a commissioner to take testimony and to continue the cause until such time as the testimony can be taken and a report of the commissioner be made. We think, however, if an inquiry is to be made as to fitness of the mother to have the custody of the child, the proceedings should be in Cherokee county, where the respondents reside and where the witnesses are available.

On the record before us we do not think the custody of the child should be awarded to the petitioner. The writ is therefore denied.

This order will not prejudice the right of petitioner to bring such proceedings in Cherokee county as he may see fit.