No. 41,241

Beverly Leach, *Appellee*, v. James C. Leach, *Appellant*.

(336 P. 2d 425)

Opinion filed March 7, 1959.

*Lee R. Meador*, of Wichita, argued the cause, and *Otto J. Koerner* and *Thomas A. Bush*, both of Wichita, were with him on the brief for the appellant.

*Pat Warnick*, of Wichita, argued the cause, and *Roy L. Rogers* and *Alan B. Phares*, both of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

Jackson, J.: This is another installment in the sad story of strife between the mother and father of a little six year old boy. The parents are contending as to which of them shall have custody of their son.

This case began as a suit for divorce between the parents. The father was granted the divorce and custody of the baby boy. While the mother was satisfied with this arrangement for the child at that time, she later changed her mind, and there now have been seven applications to change the custody of the child. This is the third appeal from the orders of the district court of Sedgwick county in this running battle. The former cases in this court are: *Leach v.*

*Leach,* 179 Kan. 557, 296 P. 2d 1078, and *Leach v. Leach,* 180 Kan. 545, 306 P. 2d 193.

The past history of the case need not be recounted here since it can be found in our former opinions. It would appear that the seven applications for change of custody of the child have been heard in several different divisions of the district court of Sedgwick county. This court is firmly of the opinion that it would be better to provide in the rules of the court that questions of child custody in any certain case should always be taken before the judge first handling the case. Of course, where the judge has left the bench, there must be a change.

It will be noted from the opinion in the second appeal *supra* that at the time of that appeal the father and child were domiciled in Omaha, Nebraska. The record in this appeal shows that in June, 1957, the father, who at that time was a government meat inspector, was transferred to Smithfield, Virginia. He moved his family consisting of his second wife and children, including the boy in question, to a home in Virginia. We are advised that the family did not like the climate in Virginia, the son had asthma, and by February, 1958, they had moved to Albuquerque, New Mexico where the father had obtained employment.

All these facts eventually became known to the mother who complains that she was not notified concerning the family and its migrations. The mother at this time, having returned from Hawaii, lived in Rhode Island with her second husband and her children of her second marriage. Thereupon, the mother filed the seventh motion to change the custody of the son from the father to herself in the district court of Sedgwick county. The father appeared by counsel, but did not appear in person or bring his son before the court. In fact, it appears that neither the father nor the son has appeared in the Sedgwick county district court since they moved to Nebraska.

On the hearing of the motion the trial judge expressed some displeasure because the father had not come from New Mexico with the son to appear before the court. The court also expressed some feeling that the father was attempting to prevent the mother from having any right of visitation or partial custody of the boy as had been decreed after the sixth motion for change of custody. Thereupon, the court issued an order changing the custody of the son from the father to the mother.

In the present appeal the father seeks to reverse the last mentioned order. In this court on this appeal, for the first time, we are directed

to a question of the jurisdiction of the courts of Kansas to change the custody of this boy evidently domiciled in New Mexico.

While this question has not been presented to the district court, it is in fact a question as to the jurisdiction of the subject of the action, and it can concededly be raised by the parties or this court on its own motion at any time. (*Shively v. Burr*, 157 Kan. 336, 139 P. 2d 401.)

It would appear from the clear holding of this court in the case of *Kruse v. Kruse*, 150 Kan. 946, 96 P. 2d 849, that the Kansas court had no jurisdiction to entertain the motion to change custody upon which it made the order from which this appeal is taken.

The facts in the Kruse case are very similar to those in the case at bar. In the former case, Mrs. Kruse had been divorced from her husband in a circuit court of Missouri. The Missouri court granted custody of a daughter to Mrs. Kruse, who later moved to Kansas with her child and established a domicile here.

Some years later, the father applied to the Missouri court for an order changing custody of the daughter. *The mother appeared only by counsel in the Missouri court.* That court after a hearing changed the custody of the child domiciled in Kansas to the Missouri father.

When the father came to Kansas and attempted to assert the Missouri order changing custody of the child domiciled in Kansas in a habeas corpus proceeding, this court held that the Missouri court had no jurisdiction to make the order for change of custody.

The comparison between the Kruse case and this case can be carried further. We are advised in the briefs in this case that Mrs. Leach after obtaining the order now appealed from, journeyed to New Mexico and there instituted a habeas corpus proceeding to obtain possession and physical custody of her son. We are advised without contradiction that the New Mexico court held the order of the Kansas district court changing custody to be void for want of jurisdiction and not entitled to full faith and credit.

To turn back to the opinion of this court in the Kruse case, this court said in that case:

"Did the Missouri court have jurisdiction to award the custody of the child to the father by the decree of September 15, 1939?

"In 2 Beale, Conflict of Laws, section 144.3, it is said:

" 'Since custody of a child by one parent carries with it domicile and a domestic status, jurisdiction to give the child to one parent or the other depends in principle on the domicile of the child; and a state which is the temporary residence of the child, not the domicile, cannot confer the right

to custody. *A fortiori*, a decree for custody rendered in a state where the child is neither resident nor domiciled, is void for lack of jurisdiction . . . If after a divorce the party to whom custody was given removes with the child to another state, this would seem to give the second state jurisdiction over the custody, and put an end to the jurisdiction of the first state; for after the divorce each party may change domicile at will, and the child's domicile changes with that of the parent in whose custody he has been placed. . . .'" (p. 947.)

After citing other authorities, in concluding the opinion this court said:

"A parent to whom the custody of a child has been awarded often takes the child into another state and there establishes a new domicile. Where such migration occurs and the child has acquired a new domicile, a decree for the custody of the child in a state where the child is neither resident nor domiciled, is void for lack of jursdiction." (p. 950.)

As early as the case of *Rodgers v. Rodgers*, 56 Kan. 483, 43 Pac. 779, this court said:

"II. As a divorce against a non-resident of this state may be obtained on service by publication, comity requires that we should give full faith and credit to decrees of the courts of sister states of a like nature when authorized by law. In such cases we must treat them as judicial records, and under the protection of section 1 of article 4 of the constitution of the United States. The question of jurisdiction, however, is always open to inquiry. Under the laws of West Virginia introduced in evidence, as well as our own, the *status* of married persons comes within the range of the judicial power, although the parties may reside in different states. But it will not be claimed that the title to land or the custody of children in one state can be settled by the decree of the courts of another; . . ." (pp. 487-488.)

See also, *Pinney v. Sulzen*, 91 Kan. 407, 137 Pac. 987. The rule of *Kruse v. Kruse*, supra, was noted with approval in *White v. White*, 160 Kan. 32, 159 P. 2d 461; in which case Mr. Justice Hoch examined carefully the question of jurisdiction over the custody of minor children. In the White case, a California court had changed the custody of two small girls from the father to the mother. At the time of the order the children were domiciled in California. In defiance of the latter order the children were brought to Kansas. The first two paragraphs of the syllabus of *White v. White*, supra, read as follows:

"1. A degree awarding custody of a minor is not *res judicata* in the sense generally applicable to judgments. In a proper proceeding the issue of custody may be subsequently inquired into upon the facts and circumstances then existing.

"2. Such a decree becomes *res judicata* concerning matters then determined as of the time the decree was rendered."

Authorities from other jurisdictions on this question have been collected in the annotation in 4 A. L. R. 2d 7, at page 85.

It is to be noted that our civil code of procedure has long given the district court granting a divorce between parents continuing jurisdiction over the custody of children of the marriage. (G. S. 1949, 60-1510, and as now amended in G. S. Supp. 1957, 60-1510.) As the above authorities clearly show, this continuing jurisdiction is to obtain as long as the children are domiciled in Kansas, but the court can have no extraterritorial jurisdiction which conflicts with the jurisdiction of the courts of another state where the children may have become domiciled subsequent to the custody orders entered by the courts of Kansas. Any attempt on the part of our courts to assert continuing jurisdiction over children domiciled in sister states would be unseemly, and such orders would not be entitled to full faith and credit in the courts of any state. This seems to have been the decision of the New Mexico court in the case now before us.

It would appear that at the time the order which has been appealed from was entered by the district court, that court no longer had jurisdiction to entertain the motion for the modification of the custody of the child concerned in this case. From the facts shown in the record he was at that time domiciled together with his father in New Mexico. The American people have not ceased to migrate, and a rule of law which reserves to the courts of the present domicile the question of custody of children would seem not only logical but very practical.

The order of the lower court must be reversed since it now appears to have been made without jurisdiction.

It is so ordered.