No. 41,571

ARCHIE C. NICCUM, JR., *Appellee,* v. FRANCES CHARLENE NICCUM LAWRENCE, *Appellant.*

(350 P. 2d 133)

Opinion filed March 5, 1960.

*W. C. Jones* and *Harold R. Riggs,* both of Olathe, argued the cause, and *H. Thomas Payne* and *Howard E. Payne,* both of Olathe, were with them on the briefs for the appellant.

*Robert P. Anderson,* of Overland Park, argued the cause, and *Lyndus A. Henry, David R. Gilman,* and *Gwendolyn V. Falkenberg,* all of Overland Park, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This is the aftermath of a divorce action in which a mother appeals from an order changing the custody of her minor child.

The basic pertinent facts on which the rights of the parties depend are not in controversy. However, they are important to a proper understanding and review of the issues involved and for that reason will be stated, in accord with our view of their import, as briefly as the state of the record permits.

Archie Niccum, Jr., 19 years of age, and Frances Charlene Schultz, who is now Mrs. Lawrence and was then 17 years of age, were married in Kansas City, Missouri, on October 2, 1953. One child,

Deborah, was born to this union. Hereafter, in the interest of brevity, the individuals just named will be referred to by their Christian names.

The marriage between Archie and Frances did not prove to be a success and on June 22, 1956, he filed an action for divorce against her in the district court of Johnson County, in which she consented to an emergency decree allowing him the divorce and granting her the custody of Deborah, subject to reasonable visitation rights on his part, and payment by him to her of $50 per month for support and maintenance of their minor child.

Following this divorce Frances married Robert Sites who was a Staff Sergeant in the United States Armed Forces and moved with Deborah from place to place as he was given different assignments. Thereafter she and Robert disagreed and they separated. Subsequently Frances gave birth to a child by her marriage to Sites.

Later, and in November, 1957, she moved with her two children to her parents' home at Creighton, Missouri, where she remained until November 14, 1958. On that date she entered into a marriage with one John Lawrence and established a home in Kansas City, Missouri, where she has since continued to reside with her husband and two children, including Deborah. Indeed, it cannot be denied that, from November, 1957, up to and until the date Archie procured temporary custody of Deborah under the *ex parte* order, both Frances and Deborah were in truth and in fact domiciled in and residents of the state of Missouri.

In October, 1957, Archie returned from Military Service to the farm home of his parents near Edgerton, Kansas, and lived there for an undisclosed period of time. Later, having obtained gainful employment with Trans World Airlines, he lived with a fellow employee, who lived close to his work in Kansas City, until the middle of January, 1959, when he again returned to live at the home of his parents.

After Archie returned to Kansas the parties had frequent difficulties over problems involving Deborah. Some of these related to failure of Archie to make child support payments in accord with the original decree. Others concerned his visitation rights with Deborah. Occasionally, if not frequently, he would take her to the home of his parents for a visit and fail to return her promptly to her mother. Frances would then call representatives in the office of the County Attorney of Johnson County who would send letters

and make telephone calls to Archie requesting the return of the child. The last of such incidents occurred in January, 1959. With respect thereto the record discloses Archie admitted that he did not return Deborah to her mother on this occasion for the reason he had been informed that it would be to his advantage to keep her in Johnson County until a motion, he contemplated filing for a change of her custody, was before the district court of that County. However, it should be stated that he gave up that idea when, again at the instigation of the mother and on call of the county attorney's office, he took Deborah to Olathe and delivered her to Frances who was waiting at that office.

In January, 1959, Archie had failed to pay two of the $50 child support payments, one for November and the other for December, 1958. On March 16, 1959, a criminal action was filed in the magistrate court of Johnson County, against him for non-support upon the complaint of Frances. Thereafter he was arrested and released on bond to appear for a preliminary examination, which was set for hearing on March 23, 1959. It appears that while instructing Frances to appear at such hearings she was advised by a deputy county attorney, in accord with his usual policy, that she was to bring Deborah with her.

On March 20, 1959, three days before the date set for the preliminary hearing, Archie, through his attorneys, filed two motions, in the district court of Johnson County, in the case in which the original divorce decree had been rendered. The first prayed for an order modifying the previous order and decree of divorce by granting the plaintiff in that action (Archie) the principal custody of the minor child (Deborah), and for an order vacating further and continued payments for the support of said child. It should also be noted that this motion not only set forth the grounds relied on for the relief therein sought but expressly stated *that the defendant* (Frances) *resided in Kansas City, Missouri, with her present husband, having in her custody the said minor child of the parties.*

The second motion prayed for an order granting Archie the temporary custody of Deborah pending the hearing upon the first. It may be said that for all purposes essential to a review of the appellate issues involved it contained the following allegations:

". . . *that the defendant herein resides without the jurisdiction of the court, having in her principal custody said minor child and the plaintiff*

has just and reasonable cause to believe that the said defendant, although duly and properly served with notice of the hearing on his motion to amend and modify, may not appear for hearing or may not appear with said child in this county and state; . . ." (Emphasis supplied.)

Notwithstanding the allegations thereof, which have been heretofore underlined for purposes of emphasis, both motions were presented to and acted upon by the court on the day they were filed. As to the first the court entered an *ex parte* order directing that it be heard on March 30, 1959, and that Frances be personally served with a copy of such order, with a copy of Archie's motion attached thereto, in the same manner as service of summons is made. To the second the court entered an *ex parte* order finding that "it would be in the best interests of said child (Deborah) to remain *within the jurisdiction of this court* during the pendency of the hearing, in the temporary custody of the plaintiff (Archie) at the residence of the plaintiff with his parents on their farm near Edgerton, Kansas." (Emphasis supplied.)

On March 23, 1959, three days after the making of the foregoing orders, in compliance with the instructions heretofore mentioned, Frances brought Deborah to Johnson County to appear at the preliminary hearing. Thereupon a deputy sheriff of that county served the *ex parte* orders on Frances who complied with the requirements of the second order and permitted Archie to take custody of Deborah. Thereafter the nonsupport action was dismissed by a representative of the county attorney's office, the reason given for that action being that Frances was living in Missouri and her only remedy would have been a Uniform Reciprocal Nonsupport Action (See Laws of 1953, Chapter 187, now G. S. 1959 Supp., 23-419 to 446, incl.) commenced in Jackson County, Missouri, and then forwarded to the State of Kansas.

Following the incidents just related Frances obtained the services of an attorney who filed a motion to modify the original decree by increasing the child support payments to $75 per month, because of a change in Archie's financial situation. This motion also included a request for the allowance of a reasonable attorney fee.

On March 30, 1959, the date it had set for the hearing of Archie's motion for an order modifying the original divorce decree by granting him the custody of the child of the parties, all parties were present, including the child who, since the date of the trial court's *ex parte* order, had been in the custody of Archie. Thereupon the

trial court permitted the parties to introduce evidence in support of their respective motions and at the close of all such evidence and arguments by counsel took the matter under advisement. Thereafter, and on April 9, 1959, it rendered its decision wherein it found that the motion of Frances requesting an increase in the child support payments should be denied; and that Archie's motion to modify and change the original decree by taking the custody of the child from Frances and awarding it to Archie should be granted. Thereupon it entered an order awarding Archie the care and custody of Deborah, subject to reasonable rights of visitation by Frances; directing that Archie's obligation to Frances to make child support payments for Deborah be terminated; and taxed the costs, including an allowance of $100 to Frances' attorney, to Archie.

Subsequently Frances, who had procured different counsel, perfected an appeal from the trial court's orders and/or judgment to this court under specifications of error which raise jurisdictional questions. Two are decisive of this appeal and will be quoted. They read:

"2. The Court erred in sustaining the motion of plaintiff below, appellee herein, for an order granting said appellee temporary custody of the minor child of the parties hereto when it appeared upon the face of said motion that the said defendant, appellant herein, and the minor child of the parties of which she had legal custody, were domiciled in another state and that the Court had no jurisdiction over the subject matter of said motion.

"3. The Court erred in sustaining the motion of plaintiff below, appellee herein, to modify the previous order and decree of the Court, granting defendant below, appellant herein, custody of the minor child of the parties, and in awarding plaintiff below, appellee herein, the care, custody, and control of said minor child when said Court had no jurisdiction over the subject matter of said motion, which was the minor child of appellant and appellee."

The foregoing full and complete statement makes it crystal clear that, from the standpoint of the face of the pleadings as well as the facts of record, both appellant and Deborah were domiciled in Missouri on the date appellee filed his motions in the district court (1) for an order modifying the previous order and decree of divorce by awarding him the custody of the minor child and (2) granting him the temporary custody of the child, pending the hearing upon the first motion. The same source makes it equally clear that when the trial court made the temporary custody order of March 20, 1959, Deborah and appellant were still domiciled in Missouri and neither had made an appearance in court. In that situation we have no

difficulty whatsoever in concluding the appellant's specification, identified as No. 2, which has been heretofore quoted and for that reason will not be repeated, is meritorious and must be upheld.

Indeed, under the existing conditions and circumstances, such order falls squarely within the rule announced in our recent decision of *Leach v. Leach,* 184 Kan. 335, 336 P. 2d 425, where in the face of facts so similar they cannot be distinguished, it is held:

"Where in a divorce proceeding, custody of a minor child is given to the father and later the father leaves the state with his child and establishes a domicile in another state, the domicile of the minor is the domicile of the father, and the court which granted the divorce and made the custody order no longer retains jurisdiction to modify or change the custody of the child (*Kruse v. Kruse,* 150 Kan. 946, 96 P. 2d 849.).". (Syl. ¶ 2.)

And in the opinion said:

"It would appear that at the time the order which has been appealed from was entered by the district court, *that court no longer had jurisdiction to entertain the motion for the modification of the custody of the child* concerned in this case. From the facts shown in the record he was at that time domiciled together with his father in New Mexico. The American people have not ceased to migrate, and a rule of law which reserves to the courts of the present domicile the question of custody of children would seem not only logical but very practical." (p. 339.) (Emphasis supplied.)

For a more recent decision, of like import and equally as controlling, see *Hannon v. Hannon* (this day decided), 186 Kan. 231, 350 P. 2d 26, which holds:

"Following cases cited in the opinion, the general rule is that where, in a divorce proceeding, custody of a minor child is given to one of the parents and later such parent leaves the state with the child and establishes a domicile in another state, the domicile of the child is the domicile of such parent and the court which granted the divorce and made the custody order no longer retains jurisdiction to modify or change the custody of the child." (Syl. ¶ 1.)

And in the opinion states:

"The gist of the holding in the Leach case, which followed *Kruse v. Kruse,* 150 Kan. 946, 96 P. 2d 849, is that where, in a divorce proceeding, custody of a minor child is given to one of the parents, and later such parent leaves the state with the child and establishes a domicile in another state, the domicile of the child is the domicile of such parent, and the court which granted the divorce and made the custody order no longer retains jurisdiction to modify or change the custody of the child. See also *Wear v. Wear,* 130 Kan. 205, 285 Pac. 606, 72 A. L. R. 425, where, at page 222, it was said:

" 'The domicile of a minor child of the parties is that of the one of them with whom it lives, or who, by a competent court, has been given its custody.' "

That the decisions just cited enunciate no new and startling principles of law in this jurisdiction is evidenced by the fact that each

contains references to *Wear v. Wear*, 130 Kan. 205, 285 Pac. 606, decided in 1930 and *Kruse v. Kruse*, 150 Kan. 946, 96 P. 2d 849, decided in 1939. Nevertheless, to fortify this statement, we quote from the Kruse case where it is said:

"Did the Missouri court have jurisdiction to award the custody of the child to the father by the decree of September 15, 1939?

"In 2 Beale, Conflict of Laws, section 144.3, it is said:

" 'Since custody of a child by one parent carries with it domicile and a domestic status, jurisdiction to give the child to one parent or the other depends in principle on the domicile of the child; and a state which is the temporary residence of the child, not the domicile, cannot confer the right to custody. *A fortiori*, a decree for custody rendered in a state where the child is neither resident nor domiciled, is void for lack of jurisdiction. . . . If after a divorce the party to whom custody was given removes with the child to another state, this would seem to give the second state jurisdiction over the custody, and put an end to the jurisdiction of the first state; for after the divorce each party may change domicile at will, and the child's domicile changes with that of the parent in whose custody he has been placed. . . .' " (pp. 947, 948.)

"A parent to whom the custody of a child has been awarded often takes the child into another state and there establishes a new domicile. Where such migration occurs and the child has acquired a new domicile, a decree for the custody of the child in a state where the child is neither resident nor domiciled, is void for lack of jurisdiction. . . ." (p. 950.)

See, also, *Leach v. Leach*, 337, 338, *supra*, where the foregoing statements are quoted, approved and applied.

That the question raised by the specification of error now under consideration relates to the subject of the action, and can be raised by the parties at any time even though it may not have been presented in the court below, a point on which the record is silent, is established in *Leach v. Leach*, supra, where it is said:

". . . Thereupon, the court issued an order changing the custody of the son from the father to the mother.

"In the present appeal the father seeks to reverse the last mentioned order. In this court on this appeal, for the first time, we are directed to a question of the jurisdiction of the courts of Kansas to change the custody of this boy evidently domiciled in New Mexico.

"While this question has not been presented to the district court, it is in fact a question as to the jurisdiction of the subject of the action, and it can concededly be raised by the parties or this court on its own motion at any time. (*Shively v. Burr*, 157 Kan. 336, 139 P. 2d 401.)" (pp. 336, 337.)

Appellee contends that our statute gives the court decreeing the divorce between parents continuing jurisdiction over the custody of their children, hence the trial court's temporary custody order

was proper. We do not agree. An identical contention was given specific attention and determined contrary to appellee's position in *Leach v. Leach,* supra, where it is said:

"It is to be noted that our civil code of procedure has long given the district court granting a divorce between parents continuing jurisdiction over the custody of children of the marriage. (G. S. 1949, 60-1510, and as now amended G. S. Supp. 1957, 60-1510.) As the above authorities clearly show, this continuing jurisdiction is to obtain *as long as the children are domiciled in Kansas,* but the court can have no extraterritorial jurisdiction which conflicts with the jurisdiction of the courts of another state *where the children may have become domiciled subsequent to the custody orders entered by the courts of Kansas.* Any attempt on the part of our courts to assert continuing jurisdiction over children domiciled in sister states would be unseemly, and such orders would not be entitled to full faith and credit in the courts of any state. . . ." (p. 339.) (Emphasis supplied.)

Having determined that appellant's specification of error No. 2 must be sustained we turn to her specification of error, heretofore identified as No. 3. Resort thereto discloses it is based on the premise that, under the existing facts and circumstances, the order of April 9, 1959, changing the original order and decree by awarding appellee the custody of Deborah, was void because the court had no jurisdiction over the subject matter of the motion and therefore had no power or authority to make such order.

Inasmuch as the temporary custody order was void for lack of jurisdiction, and since, in our opinion, the material facts controlling disposition of the claim of error now under consideration are the same as those involved in our determination of the validity of that order, we have no difficulty in concluding that our above mentioned decisions, to which we adhere, compel a conclusion the trial court's order sustaining the appellee's motion for permanent change of custody and awarding appellee the custody of Deborah was void for the same reason.

In reaching the conclusion just announced we have not been unmindful of a contention advanced by appellee to the effect that the court had power and authority to make such order because Deborah and appellant were both personally present in court on the date it was made. The inherent weakness in all arguments presented on this point lies in the fact that under our decisions— in the face of the confronting facts and circumstances—it is the domicile of the child, not the presence in court of the child or the person awarded its custody under a former decree, that is decisive

of the jurisdictional question here involved. Moreover, it should be stated, we are not inclined to hold, as appellee would seem to suggest, that his action in obtaining possession of his five year old child under a void temporary order and then bringing it into court for the purposes of a hearing on a motion for permanent change of its custody results in a waiver of such jurisdictional question. Nor are we disposed to hold the mother waived those questions for and on behalf of the child when she appeared in court in defense of such motion.

The order and judgment awarding the custody of the child to the appellee is reversed with directions to set it aside.