No. 44,144

Peggy Sue Lyerla, now Peggy Sue Ramsay, *Appellant,* v. Robert E. Lyerla, *Appellee.*

(403 P. 2d 989)

Opinion filed July 10, 1965.

*Paul Armstrong,* of Columbus, argued the cause, and was on the brief for the appellant.

*Carl Pingry,* of Pittsburg, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

Fontron, J.: This is an appeal from an order changing custody of Robert Lynn Lyerla, often called Bobby herein, from his mother to his father. A chronicle of the dreary events leading up to the present proceedings is essential to an understanding of this case, which, it may be said, mirrors the tragedy which has befallen a ten-year-old boy from the disruption of his home.

On December 7, 1959, the appellant, Peggy Sue Lyerla, secured a divorce from Robert E. Lyerla, the appellee. For convenience, they will generally be referred to hereafter as Peggy and Robert. Custody and control of Bobby, then four years old, and his sister, Linda Sue, aged six, was awarded to their mother, while their father was given custody two months each summer and was also accorded certain weekend visitation privileges. Within six months from the divorce, Peggy had married Bob Ramsay, and on June 6, 1960, Robert married Bob's wife, Mollie. This dubious reshuffling of the Lyerla and Ramsay families has visited unhappy consequences on the youngsters affected.

Warfare broke out over the Lyerla children long before the divorce was a year old. In September 1960, Peggy was adjudged guilty of contempt of court for refusing Robert his visitation privileges. The following December, Robert was granted visitation rights during the Christmas holidays. Not long thereafter, Peggy sought the court's permission to remove the children to Las Vegas, Nevada. After a hearing, in which Robert countered with a motion to change custody, the trial court, on February 17, 1961, granted Peggy's request and ordered her to give bond to guarantee compliance with its orders. On December 19, 1961, the original custody order was modified to permit Robert to visit his children in Las Vegas four days each quarter, upon giving notice.

The scene then shifts to Nevada where the embattled litigants continued their conflict in the Eighth Judicial District Court of that state.

On June 18, 1962, Robert brought habeas corpus proceedings in Las Vegas to obtain the children for that summer. An order was entered as of June 20 affirming the custodial rights previously established by the Kansas court and requiring both parties to post compliance bonds. In late October 1962, Robert filed contempt proceedings in order to visit his children for a weekend and for the additional purpose of compelling Peggy to furnish the compliance bond ordered by the court.

On June 27, 1963, the Nevada court entered an order, apparently based on a motion previously filed by Peggy, which confirmed existing custody rights but changed slightly the dates for the 1963 summer visit and, in addition, raised support payments.

A few months after the above order was made, Robert learned that Bobby had been sent to the Elsinore Naval and Military School

at Elsinore, California, for the 1963-64 school year. Alarmed at this development, Robert resorted once again to the Nevada court and, in December 1963, filed a motion to change Bobby's custody. This motion, together with another motion filed by Peggy for an increase of child support, was presented on January 3, 1964, and resulted in an order dated January 8, 1964, continuing the hearing of both motions to "an appropriate date" after Bobby finished his school year at Elsinore.

Thus matters stood until July 2, 1964, when Robert, who over Peggy's protest had already brought his son to Kansas for the two summer months of that year, filed the present motion in the Crawford County District Court seeking a change of Bobby's custody. On July 28, 1964, after an extended hearing, the trial court entered its order changing Bobby's custody to his father, subject to Peggy's right to visit the boy at his father's home at reasonable times, and confirming the mother's custody of Linda Sue. From this order, and from an earlier order of the court refusing to dismiss Robert's motion, Peggy has taken this appeal.

In the meantime, and on July 6, 1964, the Nevada court, apparently ruling on a motion filed by Peggy to cancel Bobby's visit with his father for that summer so that the boy might attend a summer camp, made an order that Bobby remain with his father for the summer vacation and be returned to his mother by August 15, 1964. Further reference to this action will be made later in this opinion.

Ten separate grounds of error are specified by the appellant in her statement of points, but we believe her contentions may be grouped generally in four main categories, which we will proceed to discuss in their order.

First, it is argued that the Crawford County District Court lacked jurisdiction to entertain Robert's motion for change of custody, and several Kansas cases are cited as authority for this position. We must concede that appellant correctly interprets our former decisions as holding, in effect, that where the custody of a child has been awarded to a parent who thereafter leaves the state and establishes a domicile elsewhere, the domicile of the child is that of the parent and the court which made the original custody order no longer retains jurisdiction to modify or to change the same. (*Leach v. Leach,* 184 Kan. 335, 336 P. 2d 425; *Hannon v. Hannon,* 186 Kan. 231, 350 P. 2d 26; *Niccum v. Lawrence,* 186 Kan. 223, 350 P. 2d 133.)

However, since those cases were decided, the Kansas legislature has adopted the Kansas Code of Civil Procedure. K. S. A. 60-1610 now provides, in pertinent part, as follows:

"(a) *Care of minor children.* The court shall make provisions for the custody, support and education of the minor children, and may modify or change any order in connection therewith at any time, and shall always have jurisdiction to make any such order to advance the welfare of a minor child if (*i*) the child is physically present in the county, or (*ii*) domicile of the child is in the state, or (*iii*) the court has previously exercised jurisdiction to determine the custody or care of a child who was at such time domiciled in the state. . . ."

We believe it is obvious that by enacting 60-1610, the legislature intended to change the rule enunciated in the foregoing cases. In his work, Kansas Code of Civil Procedure, annotated, Judge Gard, in discussing the meaning and effect of this statute, on page 730, has this to say:

"(3) Heretofore the jurisdiction over children involved in a marital controversy has depended on the domicile of the children at the time the order is made. See *Niccum v. Lawrence,* 186 K. 223, 350 P. 2d 133; *Hannon v. Hannon,* 186 K. 231, 350 P. 2d 26; *Leach v. Leach,* 184 K. 335, 336 P. 2d 425. The rule of those cases is changed by this subsection. Now the physical presence of the child is all that is necessary. Domicile continues to be a jurisdictional fact but only one alternative of several. If the Kansas court has previously exercised jurisdiction to determine the custody of a child who at the time was domiciled in Kansas, the court does not now lose its jurisdiction by the subsequent change of the child's domicile, and physical presence at the time of the later hearing is not essential. If the original jurisdiction over the child attached simply because of the presence of the child in the county, and not because of domicile, the court does not have continuing jurisdiction.

"The former rule of the Kansas case law that it was the domicile which determined the court's jurisdiction has now been supplanted by statute law which recognizes all three bases for jurisdiction as variously found in the several states, some having one and some another. The theory is that any justification for jurisdiction is sound which will provide a local forum when the welfare of children is at stake. No effort is made to solve the problems of conflicting jurisdiction which may arise."

In the case now before us, not only was Bobby physically present in Crawford County when his father's motion was filed and heard, but the district court had previously exercised jurisdiction over his custody when the divorce was granted, at which time Bobby's domicile was in Kansas. Consequently, under the express terms of the statute, the trial court had jurisdiction on two grounds, either one of which would suffice.

The appellant next maintains that Robert's motion for change of custody should have been dismissed because similar proceedings were then pending in Nevada. This claim is made because no final action had been taken on the motion for a change of custody which Robert filed in that court in December 1963.

We believe that the appellant misconceives the reach of the doctrine of "another action pending." For many years, this court has held that an action in this state is not subject to abatement because of the pendency, in another state, of an action for the same relief. In *Omer v. Omer*, 108 Kan. 95, 193 Pac. 1064, it was held:

"The pendency of an action for a divorce in another state is not a bar, nor a cause for stay of proceedings, in a similar action between the same parties in this state where a court of this state has obtained jurisdiction of the defendant by service of summons." (Syl. ¶ 1.)

The Omer case was cited with approval in *Kirby v. Kirby*, 143 Kan. 430, 55 P. 2d 356, where proceedings to terminate a marriage had been filed both in the District of Columbia and in Kansas. On page 438 of the opinion, the court stated:

"Neither is it of consequence that before the action in the supreme court of the District of Columbia was finally determined, an action in Kansas was filed for the same relief, in which personal service was obtained. The pendency of the first action was not a bar nor a cause for stay of the proceedings in this state, and had its judgment been rendered before judgment was rendered in the D. C. court, it would have been good. . . ."

In *Birmingham v. M. & W. Mining Co.*, 163 Kan. 66, 180 P. 2d 615, this court again held that the pendency of proceedings in a foreign state does not bar an action in this state based on the same cause of action.

The fact that Robert, himself, had filed both motions, the one in Nevada and the other in Kansas, would effect no change in the principle involved. In *Birmingham*, both lawsuits (for recovery of damages) had been filed by the same plaintiff, and a like situation obtained in *Kirby*, a divorce case. We believe appellant's second contention must be rejected.

It is next contended that an order entered by the Nevada court on July 6, 1964, has determined the same issues raised by the present motion, and is *res judicata* as to the question of custody. The Nevada court's order, the appellant continues, being entitled to full faith and credit under Article 4, Section 1 of the Federal Constitution, precludes Robert from pursuing further the matter of custody. To determine the validity of such a contention, we must

first examine the order itself, together with the circumstances under which it was issued.

Again, reference must be made to the sequence of events. After Robert filed his motion of December 1963, the Nevada court continued hearing thereon until after the end of the school year, and this continuance was still in effect on July 2, 1964, when the present action was commenced in Crawford County, Kansas.

Meanwhile, however, and after Robert left Las Vegas with Bobby in June 1964, Peggy had filed a motion in Nevada to cancel Bobby's visit to Kansas that year so that he might enroll in Elsinore's summer camp program. This motion was accompanied by affidavits of school officials attesting to Bobby's school record and the advisability of his attending camp. On July 6, 1964, four days after Robert's motion was filed in Crawford County, the Nevada District Court, without notice to Robert, entered the order which Peggy claims is *res judicata.*

The phrasing of this order, viewed in the context of all attendant circumstances, permits little, if any, doubt that it was made in response to Peggy's motion to terminate the summer visit. The limitations of space preclude us from reproducing the order in full but, in brief summary, it may be said that its pertinent provisions relate to summer visitation rights, to the parents' dispute over their son attending summer camp, and to affidavits and reports from Elsinore officials.

We believe the Nevada court made no pretense of ruling on Robert's motion for change of custody, since its order contains no reference whatever thereto. Nor are we entitled to infer from any language used that the court intended to deal with the problem of permanent custody. Indeed, the presumption is quite the contrary, for Robert had not been advised that his motion was to be heard, although, as an interested party, he would be entitled to notice. The presumption is that public officers will perform their duties in a rightful manner and will not act improperly. (*Gordon v. Bodwell,* 55 Kan. 131, 39 Pac. 1044; *Lewis v. City of South Hutchinson,* 162 Kan. 104, 174 P. 2d 51.) We may not assume that the district court in Nevada would take the liberty of conducting a hearing on Robert's motion without giving him an opportunity to appear and be heard.

Despite appellant's contentions to the contrary, we believe the Nevada court's order did not determine the matter here being liti-

gated and cannot be said to be *res judicata* on the question of permanent custody. This being so, no question is raised under the full faith and credit clause of the United States Constitution and we need not enter that thorny thicket.

Finally, it is urged that no change in circumstances has been shown which would warrant a change of custody.

We have consistently held over a period of many years that courts have continuing jurisdiction of matters relating to child custody and that they possess authority to change or modify their custody awards where circumstances have changed to a child's detriment. An order awarding custody is *res judicata* of matters determined *only* as of the time the order was made. In *White v. White,* 160 Kan. 32, 159 P. 2d 461, it was held:

"A decree awarding custody of a minor is not *res judicata* in the sense generally applicable to judgments. In a proper proceeding the issue of custody may be subsequently inquired into upon the facts and circumstances then existing.

"Such a decree becomes *res judicata* concerning matters then determined as of the time the decree was rendered." (Syl. ¶¶ 1, 2.)

This principle is applicable even where the judgment has been rendered by a foreign court. In *Moloney v. Moloney,* 167 Kan. 444, 206 P. 2d 1076, we said:

". . . a custody order or judgment of a foreign court in (sic) *res adjudicata* only as to matters determined by the foreign decree in that case, and as of the time it was rendered. . . ." (p. 449.)

The rule exemplified by the foregoing cases is too firmly embedded in our jurisprudence to demand additional citation of authority. We shall, therefore, proceed to consider whether the trial court's findings of changed conditions are sustained by the record.

We believe the conclusion inescapable that during the years which have elapsed since the the elder Lyerlas and Ramsays rearranged their family groups, Bobby has become a confused and emotionally upset boy. We learn from the record that he is socially maladjusted; has developed aggressive traits; is prone to exaggeration to the point of falsehood; is subject to tantrums; and that his school work has suffered.

These undesirable traits of character have developed while Bobby has been in his mother's custody. The environment in which he has been reared while his condition has deteriorated has been largely that of Peggy's home, although complete candor compels

the observation that his father may not be entirely blameless. It is likely that Bobby has been made the pawn of his parents' antagonisms and that his welfare has been subordinated to their antipathies.

Bobby's conduct is shown to have retrogressed to a point where Peggy, apparently despairing of her ability to exercise effective control, dispatched the boy, at the tender age of nine, to a military school. It may be true, as the record suggests, that Bobby did evidence improvement in attitude and purpose after a year at Elsinore, even though he may not have wanted to return the next year, but the fact that his mother found it necessary to resort to such a drastic measure reveals her failure in the raising of her son.

It lies neither within the power nor the wisdom of this court to direct in detail what course Bobby's parents ultimately should pursue in his best interest. We can only say that conditions are shown to have changed, so far as the boy is concerned, since the time his home was destroyed by divorce, and that a different disposition of his person seems advisable.

This court, in the past, has always sought to serve the welfare of those unfortunate youngsters who are the end product of their parents' failure to maintain a united home, and they continue to be the objects of our earnest solicitude. The paramount problem posed in a case of this character is what would be to the best interest of the child, or children, involved. (*Merriweather v. Merriweather*, 190 Kan. 598, 376 P. 2d 921, and cases cited therein.) There is no issue over the fitness of the parents in this case. Neither one has been found unfit, and neither now attempts to brand the other with such a stigma. Under like conditions in *Kimbell v. Kimbell*, 190 Kan. 488, 376 P. 2d 881, we held:

"The paramount issue in a motion to change custody of minor children as between the father and mother is the welfare and best interests of the children involved." (Syl. ¶ 3.)

· We believe there is substantial competent evidence to sustain the trial court's findings that a change in conditions has occurred and that Bobby's best interests would be served and his welfare advanced by a change of custody to his father. Although the change of residence from his mother's to his father's home will have the unfortunate result of separating Bobby from his sister, and from a small half-sister as well, we do not view this as constituting an abuse

of discretion on the part of the trial court. Having concluded, on sufficient evidence, that a change was imperative, the court was justified in ordering the move despite its interference with personal relationships.

In our opinion, no error is shown to inhere in the judgment of the court below, and it is affirmed.