No. 41,920

In the Matter of the Application of THOMAS C. PRICE, III, for a Writ of Habeas Corpus. (THOMAS C. PRICE, III, *Appellee,* v. BONNA PRICE, *Appellant.*)

(356 P. 2d 1013)

Opinion filed November 12, 1960.

*Victor D. Goering,* of Hutchinson, argued the cause, and *William A. Gossage,* of Hutchinson, was with him on the brief for the appellant.

*A. Lewis Oswald,* of Hutchinson, argued the cause, and *William L. Mitchell* and *E. Dexter Galloway,* both of Hutchinson, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a habeas corpus action wherein the father, a resident of the State of Delaware, prevailed and was given the custody of his son by the district court of Reno County, Kansas, against the mother, a resident of Kansas, who brought the child to this state by stealth and contrary to a court order in the State of Delaware, where the father had been granted custody of the child following an action for divorce.

The appellant states the only question presented by this appeal "is whether or not this mother [respondent-appellant] is entitled to a modification of the foreign decree *as to visitation* rights, in the

light of undisputed evidence of changed conditions arising since the Delaware decree." (Emphasis added.)

The uncontroverted facts established by the pleadings and the evidence are that Thomas C. Price, III, (petitioner-appellee) of Wilmington, Delaware, is the father of Michael Price, a minor, born in lawful wedlock to the mother, Bonna Price, a resident of Hutchinson, Kansas. The parties were divorced by an order of a trial court in the State of Delaware following which the Family Court in Delaware awarded the custody of Michael to the father.

Prior to the marriage of the parties the mother had two previous children born out of wedlock, and upon the marriage the father adopted them. The custody of these two children was awarded to the mother, and they are not involved in this action.

Although the original order dated January 23, 1958, awarding custody of Michael to the father was modified as to visiting hours by the Delaware court on the 21st day of July, 1959, such order is still in full force and effect so far as the custody of Michael is concerned. The visitation rights of the mother, by reason of such modification, were defined as follows:

"On Sunday, July 26, 1959, the mother shall have the child between the hours of 9:00 A. M. to 8:00 P. M. On Wednesday, August 5, 1959, the mother shall have the child for the same hours, as well as on Sunday, August 9, 1959, and Wednesday, August 19, 1959, and every other alternate Sunday and Wednesday, thereafter."

The mother requested but was refused permission by the Delaware court to bring the children to Kansas, whereupon she removed the children, including Michael, from the State of Delaware without the permission of the Delaware court, or the consent or knowledge of the father to whom the custody of Michael had been awarded. The mother brought the children to the home of her parents at Hutchinson, Kansas, on the 29th day of July, 1959, whereupon the father instituted this habeas corpus action in the district court of Reno County to regain the custody of Michael.

The mother alleged in her answer that by virtue of changed conditions and circumstances not then before the court in the State of Delaware, and changes subsequent to the Delaware decree, she was entitled to a modification of the decree rendered in that court; that the petitioner was wholly unfit to have the custody of said child and that the best interests of said child would be served by a vacation and modification of the Delaware decree; that Debbie Price,

the mother of Thomas C. Price, III, was residing in the home proposed for Michael Price, and that Debbie Price was unfit to have custody of said child; and that Bonna Price, the respondent, was a fit and proper person to have care, custody and control of her natural child.

The trial court in hearing the matter admonished the parties that it would not try the divorce case which had been concluded in Delaware, but would hear evidence in support of the mother's allegations, "that by virtue of changed conditions and circumstances she is entitled to the child, that the Petitioner is wholly unfit to have the child, and the best interests of the child would be served by her keeping him."

By reason of facts admitted in the pleadings the burden of proof concerning the foregoing allegations was upon the respondent, and the trial court directed her to proceed first with her evidence. The trial court, after hearing all of the evidence of both parties, announced its decision as follows:

"It is the decision of the Court that under the evidence in this case the Court finds that the petitioner is not unfit, but that he is fit; that there have been no changed circumstances since the time of the last decree or any of the decrees of the Delaware Court; that the interests of justice do not demand or require the change in custody; that this court accordingly remands the child to the petitioner and grants the prayer of the petition.

"Now I want to say this too. This boy needs a mother as well as he needs a father, and I am sure that in the interests of simple justice the boy should be permitted to visit the mother out here provided security be obtained, of course, that the child was returned and that this mother accept her responsibility under the law to obey the law and comply with it. I doubt if I have the authority in this proceeding to make any orders as to visitation, that is a matter for the Delaware Court again, but I think that the court there, in the interests of fairness, would see that rights of visitation were awarded if the conduct of the parties were such as to justify any confidence that the decree would be complied with."

It appears from the brief of the appellant that she has conceded the appellee is entitled to the custody of Michael. This was the ultimate issue before the trial court under the pleadings. Under these circumstances no issue is presented for review on appeal. We shall proceed, however, to consider the appellant's contentions.

The appellant contends the question presented by this appeal has never, directly, been before the Supreme Court of Kansas.

The appellant contends the appellee has not fulfilled his obligation under the Delaware decree. It is said he has not paid child support as ordered and thus carried on a campaign of economic war-

fare which ultimately forced the appellant to return to the home of her parents in Hutchinson, Kansas. She argues her financial dilemma was fostered and contributed to by the appellee's failure to support. Having contributed to this status, he should not be allowed to profit from the result.

She argues the order allowing visitation of one day per week is unreasonable in the light of the great distance involved and in the light of her financial condition. In support of her argument reliance is placed upon the comments made by the trial court with respect to the mother's visitation, and upon two equitable maxims: (1) "He Who Comes into Equity Must Come with Clean Hands;" and (2) "Equity Delights to Do Justice and Not by Halves."

The appellant further argues that she has never been adjudged "unfit" in any court of any state and that the present decree of the trial court deprives her of a parental right—the right of reasonable visitation. Indirectly, it is argued, she has been deprived of this right and by reason thereof the requirements of the due process clause of the Constitution of the United States have not been fulfilled.

The appellant has no quarrel with the authorities in this jurisdiction on the subject of child custody where one of the parents resides in another state. Both parties rely upon *Wear v. Wear*, 130 Kan. 205, 285 Pac. 606. Other authorities on the point, upon some of which the appellant relies, are *White v. White*, 160 Kan. 32, 159 P. 2d 461; *Maloney v. Maloney*, 167 Kan. 444, 206 P. 2d 1076; *In re Heilman*, 176 Kan. 5, 269 P. 2d 459; and *In re Thompson*, 178 Kan. 1, 282 P. 2d 440.

It is apparent from the record the trial court adhered carefully to the basic decision in *Wear v. Wear*, supra, to which we adhere. There, after reviewing numerous authorities, it was said in the opinion:

". . . in this state, and under our statutes as they now exist, a judgment and decree in an action for divorce rendered by the court of another state shall be given the same force as if rendered by a court of this state, 'and shall, as to the status of all persons, be treated and considered and given force the same as a judgment of the courts of this state of the date which said judgment bears.'

"However, the jurisdiction of the trial court in this proceeding to determine what disposition should be made of the child between the petitioner, on the one hand, and the respondent, on the other, did not depend on the domicile of the child, nor on the domicile of either of its parents. (*Finlay v. Finlay*, 240 N. Y. 429.) The disposition of a child in a case such as this should depend on

the law of the place where the child is found rather than the law of the place from whence it came. In a habeas corpus proceeding between parents for the custody of the child the rights of the parents are to be considered, but the interest of the state, in its position as *parens patriae* to all minors within its jurisdiction, is ever present. As between the parents themselves, they may be bound by a former adjudication (see *Avery v. Avery*, 33 Kan. 1, 6, 5 Pac. 418; *In re Hamilton*, 66 Kan. 754, 71 Pac. 817), but the state, in its relation of *parens patriae*, looks to the welfare of the child at the time the inquiry is being made, and for that purpose former adjudications between parents is evidenciary only and not controlling . . ." (p. 224.)

Further in the opinion the court said:

". . . The trial court correctly held that the contest as presented to the court was one between the father and the mother, and that as between them the matters adjudicated by the Oklahoma court in the divorce case were *res judicata* as to matters determined by the decree in that case, and as of the time it was rendered. The trial court specifically offered to hear evidence as to changed conditions which would authorize or justify a different order with respect to the custody of the child, but, as shown by the entry in the journal, counsel for respondents stated in open court they had no evidence of that character to offer." (p. 225.)

Decisions following *Wear v. Wear*, supra, more closely analogous to the factual situation presently before the court are *White v. White*, supra, and *In re Thompson*, supra.

A parent who is a proper person is entitled to have access to, and at reasonable times to be allowed to visit and be visited by, a child whose custody has been given to the other parent. (See, 67 C. J. S., Parent and Child, § 8, p. 631.) The desirability of such visitation was discussed in the case of *In re Hipple*, 124 Kan. 3, 256 Pac. 1015, cited by the appellant to show that parents in Kansas are accorded reasonable rights of visitation in custody cases. There, however, the court had before it an *original habeas corpus action between parents residing in this state*, where the original jurisdiction of the Supreme Court was invoked to put a summary quietus on what might have developed into a scandalous conflict of jurisdiction between the district courts of Reno and Sedgwick Counties. In the exercise of *original jurisdiction* the Supreme Court had power to change the custody of two children from the mother to father, and retained jurisdiction over the case to enforce compliance with its orders, thereby *enforcing visitation rights previously granted the father*. In the instant case the valid and subsisting custody order awarding Michael to his father is in the Delaware court, if the trial court's findings become final by the determination of this appeal.

*In re Hipple*, supra, does illustrate, however, that for the pur-

pose of determining the right to the custody of a child, the inquiry in habeas corpus proceedings extends far beyond the issues that ordinarily are involved in such proceedings. The court is dealing with a matter equitable in nature where the child's welfare is the supreme consideration, irrespective of the rights and wrongs of its contending parents, although the natural rights of the parents are entitled to due consideration. (See, 25 Am. Jur., Habeas Corpus, § 80, p. 204.)

The appellant cites *Kellogg v. Kellogg*, 187 Or. 617, 213 P. 2d 172; and *Lingel v. Maudlin*, 188 Or. 147, 212 P. 2d 751, to show that it has been held error not to accord visitation privileges to a parent. In each of these cases *the parent residing in the State of Oregon had the lawful custody of the child, or children, by reason of a previous court order*. In the *Kellogg* case the mother, presumably residing in Idaho with her second husband, upon a motion for change of custody was denied all rights of visitation by the trial court which granted the parties a divorce. The court said the mother failed to sustain the burden of proof cast upon her to show a change in conditions affecting the welfare of the child, and that the proposed change in custody would be for the child's best interests. But after reviewing the evidence the Oregon court held the mother should not be denied the right of visitation.

In *Lingel v. Maudlin*, supra, the mother, residing in Idaho where the parties were divorced, brought an equitable suit in the State of Oregon to secure custody of the children from the father, residing in the State of Oregon and to whom custody had previously been awarded by the Idaho court. After the father was given custody of the children, he moved from Huntington, Oregon, only 15 miles from Weiser, Idaho, where the mother lived, to La Grande, Oregon, and the mother moved to Emmett, Idaho, making the distance 160 miles between them and rendering it difficult for the mother to exercise her right of visitation at the home of the father. The trial court in Oregon after hearing the matter authorized the mother to take the child from the father's home for periods of not more than three hours on the fourth Saturday or Sunday of each month, or on both of said days, and awarded the mother the care and custody of the children during the summer months of the school vacation and during the Christmas school vacation in alternate years. The court said:

". . . In the opinion of this court the plaintiff has failed to establish by a preponderance of the evidence that any conditions relative to the welfare of

the children have materially changed since the order of the Idaho court, with the exception of the matter of visitation rights now to be discussed." (p. 154.)

The mother there asserted in her brief "all that is really involved in the present appeal is visitation rights." The Oregon court said the trial court erred in providing that the mother should have the actual custody and control of the minor children for the summer months and during the Christmas holidays in every other year, but that even if no provision were made in the decree, the mother would have the right of reasonable visitation of the children. In the opinion it was said:

". . . Of this she has been wrongfully deprived. The plaintiff is entitled to a decree which will protect her in the full enjoyment of that right and for the purpose of avoiding other disputes, her rights should be made specific . . ." (p. 156.)

Thereupon the court delineated the mother's visitation rights. In reviewing the Oregon law the court said:

"The divorce decree of the Idaho court, in so far as it pertained to the rights of custody and visitation, being subject to modification in that state, was not a final decree. Nor was the Idaho order of modification final. It follows that the full faith and credit clause of the federal constitution did not bar the Oregon court from hearing the case on its merits after the defendant and the children had established residence in this state. . . . Nevertheless it was incumbent upon the plaintiff to show that conditions had so changed since the order of the Idaho court as to warrant a change in its provisions. No change of legal custody should be made unless the evidence establishes such change of condition *relative to the welfare of the children* as justifies modification . . ." (pp. 152, 153.)

While there is some variation in the foregoing statement of law pronounced by the Oregon court from that stated in *Wear v. Wear*, supra, the factual situation confronting the Oregon court is not the one with which we are here concerned. Here the appellant, residing in Kansas, does not have lawful custody of the child. Having been given permission by the appellee's mother to take Michael for the day in Wilmington, Delaware, pursuant to the appellant's visitation right under the Delaware court order, she absconded with the child to the State of Kansas. When the appellant was asked by her counsel at the hearing where she took Michael in Wilmington she answered, "*I took him right in front of the courthouse.*" (Emphasis added.)

In the Oregon case *(Lingel v. Maudlin,* supra) the father, residing in Oregon, had lawful custody of the children. Here the father before the Kansas court, who has been granted the legal custody of

the child, resides in the State of Delaware where the valid and subsisting custody order was entered, if the findings of the trial court become final by the determination of this appeal.

A review of the record presented to this court on appeal discloses that the findings made by the trial court are fully sustained by the evidence. The appellant by her evidence made no effort whatever to show the father was unfit to have the custody of Michael. Most of her evidence concerned her ability and fitness to have custody of the child. In fact, the only evidence tending to disclose changed conditions since the entry of the original custody order by the Delaware court relates to the fact that she now resides in Kansas while formerly she resided in the State of Delaware. She testified that by reason of her present financial condition it would be impossible for her to return to the State of Delaware to visit her child.

On this point the appellant's hands are not clean, she having surreptitiously, and contrary to the order of the Delaware court, taken Michael out of the State of Delaware to Kansas.

A case somewhat analagous to the instant case on the facts is *White v. White,* supra, where the father in violation of the order of a California court surreptitiously took the children and came to Kansas with them. In the opinion the court said:

"To hold that a prior adjudication awarding custody of a minor child may be treated as a nullity, and be given no consideration whatever would produce intolerable situations. This would be true regardless of whether the prior adjudication was by a court of the same state or by a court of a foreign state. To permit a parent, defeated in a contest for custody of a child, to avoid entirely the effect of the decision against him simply by spiriting the child away into another jurisdiction would make a mockery of judicial decrees." (160 Kan. 32, 44.)

In the case at bar when the appellant was asked why she returned to Kansas on the 29th day of July, 1959, she answered:

"A. *To come back to Kansas to get my three children together, to make a home for them,* and to be with my folks to help me. The cost of living in Delaware was too high.

"Q. Were you able to support your family living in Delaware?

"A. Yes, I was able to support them." (Emphasis added.)

The appellant admitted it was her husband who wanted the divorce and that he gave her a choice to file the suit on the ground of desertion or in the alternative, if she did not, he would file an action on the ground of adultery.

The appellee testified that the parties had lived apart for more

than a year prior to the divorce, and at the time of the divorce she was noticeably pregnant by another man.

The appellee's testimony concerning child support payments of $20 per week for the two children he adopted was to the effect that he had kept his child support payments up quite regularly, except at times when he was pressed and did not have the money; that at times he did not know where the appellant was and did not make payments, but that on such occasions he consulted with the court in Delaware. At no time has he been cited into the Delaware court for nonpayment of child support.

In conclusion we hold the trial court made the only logical decision which it could upon the evidence presented by the appellant, and the court did not err in granting the writ.

Upon all the facts, conditions and circumstances here presented the trial court properly refrained from making any orders relating to the visitation rights of the appellant, that being a matter for the Delaware court wherein the valid and subsisting custody order now stands. Under these circumstances the Delaware court is the proper forum in which to adjudicate parental rights of visitation.

Reference by counsel for the appellant to a denial of due process is a bald assertion, not having favored the court with authoritative citations nor argued the point with persuasive reason.

A child custody matter was recently before this court in *Niccum v. Lawrence,* 186 Kan. 223, 350 P. 2d 133, in which it was held the Kansas court did not have jurisdiction to modify or change the custody of a child when the child's domicile was in another state. A careful study of the facts there presented will disclose the doctrine stated in *Leach v. Leach,* 184 Kan. 335, 336 P. 2d 425, there applied, is not applicable to the situation governed by the rule of law set forth in *Wear v. Wear,* supra, and the cases heretofore cited adhering thereto. It will be observed in the line of authorities indicated by the *Niccum* case 2 Beale, Conflict of Laws, § 144.3, is quoted (*Kruse v. Kruse,* 150 Kan. 946, 96 P. 2d 849; and *Leach v. Leach,* supra), and in the other line of authorities adhering to the *Wear* case 2 Beale, Conflict of Laws, § 147.1, is quoted (*White v. White,* supra). See, also, Ehrenzweig, Conflict of Laws, [1959] Part One, § 87, pp. 281, 284, discussing "the Kansas rule" relating to foreign custody decrees.

The judgment of the trial court is affirmed.