No. 46,356

In the Matter of the Application of George Thomas Miracle for a Writ of Habeas Corpus, GEORGE THOMAS MIRACLE, *Appellee,* v. JANET HAY MIRACLE, *Appellant.*

(490 P. 2d 638)

Opinion filed November 6, 1971.

*Park McGee,* of Haskin, Noonan, McGee & Hinkle, of Olathe, argued the cause and was on the brief for the appellant.

*John T. Flannagan,* of Payne & Jones, Chartered, of Olathe, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a habeas corpus action wherein the father, a resident of Kentucky, sought to have the district court of Johnson County, Kansas, enforce an order of the Circuit Court of Boyd County, Kentucky, granting a permanent change of custody of the divorced couple's three minor children to the father. The trial court after hearing the matter awarded custody of the children to the mother, except for the summer vacation period when the father was given temporary custody and the right to take the children to the State of Kentucky. The mother appeals from the order which is essentially in her favor.

Numerous errors, including trial errors, are asserted on appeal. The mother seeks to have the order of the trial court modified to deny the father visitation rights, among other things.

While the basic questions presented on appeal are relatively simple, the somewhat complicated factual background of the matter is necessary to give perspective to our review.

George Thomas Miracle (Petitioner-Appellee) and Janet Hay

Miracle (Respondent-Appellant) were divorced on January 15, 1968, by a final decree entered by the Boyd County Circuit Court of Kentucky. Janet was granted custody of the three children, subject to George's reasonable rights of visitation.

After the divorce in May, 1968, Janet moved with the three children to Ft. Leavenworth, Kansas, and moved in with the Eads family, consisting of Major Hugh Eads, his wife, Nancy, and their three children. Nancy Eads and Janet had been close friends for approximately 22 years. In May, 1970, Mr. and Mrs. Eads were divorced and on June 1, 1970, Janet and her three children and Nancy Eads and her three children all moved into a house at 808 Troost Street in Olathe, Kansas. Janet had employment with the Kansas School for the Deaf.

On June 2, 1970, Janet permitted Ernest and Zelma Miracle, the children's grandparents, to take the children to Kentucky for summer visitation. On June 15, 1970, while the children were physically present in the State of Kentucky, George filed a motion in the Boyd Circuit Court at Catlettsburg, Kentucky, requesting that he be given the care, custody and control of the children until the 4th day of August, 1970, or until such time thereafter as their mother, the appellant herein, might return to the State of Kentucky to pick them up. A copy of the motion was mailed to Charles S. Sinnette on June 15, 1970. Mr. Sinnette had been Janet's attorney in the original divorce action in Kentucky. In addition to the motion, a notice scheduling the matter for hearing on June 20, 1970, was mailed to Mr. Sinnette. On the 19th day of June, 1970, a hearing was held at which Mr. Sinnette was present on behalf of Janet. At that time the children were physically present in the State of Kentucky. The Boyd Circuit Court thereupon ordered that the children be placed in the custody of George by placing the children in the home of the grandparents, Ernest and Zelma Miracle, in Catlettsburg, Kentucky, through the 4th day of August, 1970, or until such time thereafter as Janet may return to Kentucky for the purpose of picking up her children. When this order was entered Janet was in Olathe, Kansas.

On the 20th day of June, 1970, Ernest Miracle, the children's grandfather, and George wrote a letter to Janet in Olathe, Kansas, advising her the court proceeding had taken place and that copies of such proceeding were being forwarded to her.

Janet received this letter on June 22, 1970. It constituted her first

notice that the children were not being returned prior to August 4, 1970. Janet immediately telephoned Ernest in Kentucky and discussed the situation with him on the same day she received the letter. On that same day (June 22) Janet consulted with her attorney, Roger Noonan, of Olathe, Kansas, at approximately 1:30 p. m. At that time Mr. Noonan called Mr. Sinnette in Kentucky and discussed the proceedings there. In the conversation Mr. Sinnette advised Mr. Noonan that no order had been entered; that the matter had been continued to June 26th.

Sometime during the late evening hours of June 22, 1970, Janet telephoned Mr. Noonan and consulted with him concerning a journey to Kentucky to pick up her children. Noonan advised Janet she could pick up the children inasmuch as no order had been entered. Accordingly, at 5 o'clock on the morning of June 23, 1970, Janet flew to the State of Kentucky and without the permission of the Kentucky Court, Ernest, Zelma, or George went to the grandparents' home where she took the children without speaking to any of them to inform them she was taking the children from the State of Kentucky. In this effort she was assisted by her sister and brother-in-law who resided in West Virginia. Janet flew the children back to the State of Kansas from West Virginia.

Upon learning that Janet had taken the children, Ernest proceeded to obtain a warrant for Janet's arrest. When the warrant was returned from West Virginia unserved, Ernest gave the Boyd County Sheriff a description of Janet and information relating to her presence at the University of Nebraska, where she was taking summer courses in connection with her employment at the Kansas School for the Deaf at Olathe.

At the direction of Janet her Kansas attorney, Mr. Noonan, wrote to Mr. Sinnette and advised him that he was relieved of any authority to speak on Janet's behalf as of June 24, 1970.

Thereafter, on the 29th day of June, 1970, George filed a motion with the Boyd Circuit Court asking for permanent custody of the children, and for relief from any duty to pay support while the children were absent from the State of Kentucky. On the same day a copy of the motion, and notice of hearing setting the matter for July 10, 1970, was mailed to Mr. Sinnette. A copy of the motion, an affidavit by George and a motion scheduling the hearing was mailed to Janet at her last known address in Olathe, Kansas, on the 2nd day of July, 1970. Although Mr. Noonan, on behalf of Janet, had con-

tacted an attorney by the name of Rice in Kentucky on the 25th day of June, 1970, to check into the situation in Kentucky, no one appeared on behalf of Janet at the hearing held on July 10 on the motion for permanent change of custody. The court there heard evidence, made findings of fact and conclusions of law determining that the court had jurisdiction over the parties and their infant children. It thereupon amended the original custody order granting custody to the father and ordered that Janet return the children to the State of Kentucky. In addition, the Kentucky Court relieved George of his duty to support under the original decree. This order was forwarded to Janet at her Olathe, Kansas, address on July 17, 1970. Her testimony in the record discloses that she does not feel that the foregoing Kentucky order legally affects her.

Prior to the entry of the above order by the Kentucky Court, Mr. Sinnette, on July 1, 1970, filed a motion for permission to withdraw as attorney of record for Janet. The order of the Kentucky Court permitting Mr. Sinnette to withdraw as attorney of record for Janet was filed on July 10, 1970.

On the 14th day of July, 1970, Janet was arrested and incarcerated in Lincoln, Nebraska, and on the following day released from jail under bond. Her arrest was based upon a criminal complaint for kidnapping signed by Ernest Miracle. George and Ernest arrived in Lincoln, Nebraska, on July 15, 1970, and attempted to obtain custody of the children, but in this effort they failed. An attempt was also made to extradite Janet, but the State of Nebraska refused to grant extradition. Janet and her children concluded their summer sojourn in Nebraska and subsequently returned to Olathe.

When Janet left Olathe for Nebraska for additional schooling in the summer of 1970, she placed a hold order on her mail at the Olathe post office. As a consequence Janet claims she did not receive notice of the Kentucky court orders pertaining to custody changes until after the orders were entered.

On the 10th day of September, 1970, the instant action was initiated in the District Court of Johnson County, Kansas, in the form of a petition for writ of habeas corpus. In the petition George requested the District Court of Johnson County to enforce the order of the Body County Circuit Court in Kentucky and deliver the three children into his care, custody and control.

Janet in her answer alleged in part that she had received no actual notice of any proceeding between June 26 and July 10, because her

mail was being held in Olathe. She also alleged that both George and Ernest knew her correct post office address after June 26, at the University of Nebraska and that correspondence addressed to her in Olathe would not be received without unusual delay. She also raised in her answer the question of changed circumstances and conditions which may have a bearing upon the custody of the children. After hearing the case the trial court determined the controversy as follows:

"THE COURT: This court in determining what is basically a child custody fight, in the form of a habeas corpus action, has the power and the obligation to go beyond the records of the Kentucky Court. Involved in this cause have been questions of full faith and credit, due process and other constitutional issues, questions of conflict of laws, adequacy of notice, and jurisdictional issues have been raised.

"The Court finds and determines from all the evidence and as a matter of law that the orders and the judgments of the sovereign State of Kentucky made and entered in the Boyd Circuit Court, Civil Case No. 7868-C, are valid and entitled to full faith and credit in Kansas and in the present action.

"However, these judgments have no constitutional claim to a more conclusive or final effect in Kansas than in the State of Kentucky. Which is to say, Kansas has as much right to qualify or modify as does Kentucky in the area of the minor children, of Janet Hay Miracle and George Thomas Miracle, their custody, support, visitation and all other matters touching on their welfare and best interest. We need not consider whether this Court has the power and the jurisdiction to make such orders as the children's welfare demands absent a change in circumstances or conditions, inasmuch as it is the specific finding of this Court that a change of circumstances has occurred subsequent to the judgment and orders of the Kentucky Court. Although the changes are marginal and minimal, this Court finds that the recent surgical procedures performed on one of the children, the fact that they are settled in Olathe schools, and that the children have been emotionally disturbed due to the arrest of their mother in Nebraska and Kansas, and by the various court actions, are significant changes in circumstances to support a modification of the prior judgment.

. . . . . . . . . . . .

"By virtue of the children being present before this Court, as are each of the parents, and by virtue of the changes in circumstances between the spring and summer of 1970 and this time, and without drawing conclusions of law as to the lawful residence or domicile of the children, it is the judgment of this Court that the Respondent Janet Hay Miracle should continue as the custodial parent of the minor children, Jayme Sue Miracle, Meggan Miracle and James Thomas Miracle.

"The Court rejects the contention that there is an immoral or abnormal sexual relationship between the Respondent and her friend of 22 years, Nancy Eads. It is, however, impossible to condone the hybred communal family structure of the Miracle and Eads families. And it is the order of this Court

that such arrangement be terminated as soon as possible. And it is the further order of this Court that should the Eads family still reside in the Miracle Home on or after December 15, 1970, then and in the event the custody of the Miracle children will be transferred to their father, the Petitioner, as of December 29, 1970.

"This Court has some question about the circumstances of the children visiting in Kentucky and wishes to make it clear that the temporary or seasonal custody for visitation hereinafter ordered accrues to the children's father, George Thomas Miracle, and not to the grandparents, Mr. and Mrs. Ernest Miracle. Which is not to say that the Petitioner may not exercise his custody and visitation by leaving his children with his parents for some period of time.

"It is the further order of the Court that the custody of the children beforementioned be with their father from June 14, 1971, to August 20, 1971, and for a similar period of each child's minority. I would correct the record to reflect the dates of this coming summer. The Petitioner should have such further visitation as is reasonable when visitation can be exercised in the greater Kansas City area.

"Petitioner shall pay to the Respondent as and for child support the sum of $60.00 per month per child until the further order of this Court or the Boyd Circuit Court, provided, however, that the payments for June, July and August of each year shall be prorated, and future payments are to be made on or before the first day of each month in advance, commencing December 1, 1970.

"It is recognized that the father of these children has been put to a great deal of expense and inconvenience and suffered many hardships by virtue of the Petitioner moving from Kentucky and because of her subsequent outrageous conduct. By virtue of her move to Olathe, Kansas, Janet Hay Miracle has an excellent job. Accordingly the costs of this action, including a fee of $300.00 for the Guardian *Ad Litem* and attorney for the Miracle children shall be taxed two-thirds to the Respondent and one-third to the Petitioner, except that the original filing fee cost deposit and the subsequent $75.00 each party has advanced as an additional cost deposit shall first be applied to the total Court costs before the two-thirds/one-third allocation of the balance. The remarks of Court in rendering its findings, conclusions and judgments and orders, as presently made, shall be transcribed and given to each party with the cost of transcription taxed as part of the Court costs.

"The children may not leave Kansas and go to Kentucky until Petitioner has paid his proportionate share of the Court costs."

The main thrust of no less than five points of error assigned on appeal by the appellant is that the Kentucky court orders were not entitled to full faith and credit here in Kansas. It is argued the district court erred regarding its determinations of fact and law with respect to the effect of the Kentucky orders.

It is apparent the appellant has misconstrued the trial court's decision. While the trial court did give lip service to the Kentucky orders and did make a finding that they were all valid and entitled to full faith and credit in Kansas, its actual decision is based upon

the evidence of changed conditions which was presented to him in a lengthy hearing. In other words, those findings were immaterial to the court's decision in this case, and even though the trial court may have erred regarding the validity of the Kentucky orders, that error is harmless in the procedural context of this case, where the court entertained evidence concerning changed circumstances and conditions since the date of entry of the Kentucky orders and based its decision upon that evidence in light of what was best for the welfare of the children.

The appellant's answer to the petition for a writ of habeas corpus alleges that the appellee was not a fit and proper person to have the care, custody and control of the minor children, but that the appellant was a fit and proper person and that the welfare of the children required the continued custody of the appellant. These allegations in the appellant's answer were considered by the trial court as sufficient to require the hearing of evidence on the issue of changed conditions. At the hearing the appellant offered evidence of changed conditions, argued that circumstances and conditions had changed and she received a favorable decision on that issue from the court.

Under these circumstances the only legitimate question before the court in this case is whether a trial court has the power in a habeas corpus proceeding, where all parties are before the court and the children are physically present in the State of Kansas, to hear evidence of a change of circumstances when faced with an allegedly valid order from a sister state awarding custody to the petitioner, regardless of whether the court finds that sister state's order to be constitutionally valid or invalid in the same proceeding.

Should the Kansas Court find in the same proceeding that the Kentucky custody orders were in some way improperly entered, that does not oust the Kansas Court of the power to enter binding orders, when all of the parties are before the court, the children are physically present within the State of Kansas and the evidence shows a change of circumstances.

The Kansas Supreme Court has long recognized that a habeas corpus proceeding is a proper vehicle for the determination of questions pertaining to child custody. For the purpose of determining the right to the custody of a child, the inquiry in habeas corpus proceedings extends far beyond the issues that ordinarily

176

are involved in such proceedings (*In re Hipple*, 124 Kan. 3, 256 Pac. 1015).

*Wear v. Wear*, 130 Kan. 205, 285 Pac. 606, is commonly regarded as establishing the Kansas rule on this point. The court there had before it a habeas corpus proceeding involving child custody on facts somewhat similar, and after reviewing numerous authorities it was said in the opinion:

". . . in this state, and under our statutes as they now exist, a judgment and decree in an action for divorce rendered by the court of another state shall be given the same force as if rendered by a court of this state, 'and shall, as to the status of all persons, be treated and considered and given force the same as a judgment of the courts of this state of the date which said judgment bears.'

"However, the jurisdiction of the trial court in this proceeding to determine what disposition should be made of the child between the petitioner, on the one hand, and the respondent, on the other, did not depend on the domicile of the child, nor on the domicile of either of its parents. (*Finlay v. Finlay*, 240 N. Y. 429.) The disposition of a child in a case such as this should depend on the law of the place where the child is found rather than the law of the place from whence it came. In a habeas corpus proceeding between parents for the custody of the child the rights of the parents are to be considered, but the interest of the state, in its position as *parens patriae* to all minors within its jurisdiction, is ever present. As between the parents themselves, they may be bound by a former adjudication (see *Avery v. Avery*, 33 Kan. 1, 6, 5 Pac. 418; *In re Hamilton*, 66 Kan. 754, 71 Pac. 817), but the state, in its relation of *parens patriae*, looks to the welfare of the child at the time the inquiry is being made, and for that purpose former adjudications between parents is evidenciary only and not controlling. . . ." (p. 224.)

Subsequent decisions following the *Wear* case are *White v. White*, 160 Kan. 32, 159 P. 2d 461; *Moloney v. Moloney*, 167 Kan. 444, 206 P. 2d 1076; and *In re Thompson*, 178 Kan. 1, 282 P. 2d 440; and see, *Price v. Price*, 187 Kan. 292, 356 P. 2d 1013.

One of our more recent decisions on the point is *Perrenoud v. Perrenoud*, 206 Kan. 559, 480 P. 2d 749; there the proceeding before the District Court of Johnson County, Kansas, was a habeas corpus action involving custody of minor children.

The law of this state is stated in the following syllabi in that decision as follows:

"7. The paramount concern of courts in every child custody proceeding is the welfare of the child.

"8. In the interest of a minor child's welfare, a court of this state, when the child is physically present therein, has jurisdiction over his care, custody and control, although the court of a sister state has 'concurrent jurisdiction.'

. . . . . . . . . . . . .

"11. Full faith and credit has only limited application to a child custody decree; it is inherent in the nature of such a decree that it is not final and conclusive, but is subject to the right of the parties to show a change of circumstances and conditions."

The doctrine of *parens patriae* has long been recognized in Kansas and has been held applicable in habeas corpus proceedings since the adoption of our new Code of Civil Procedure, which embodied revisions of the old habeas corpus procedure. (*Turner v. Melton,* 194 Kan. 732, 402 P. 2d 126; and see also *Murphy v. Murphy,* 196 Kan. 118, 122, 410 P. 2d 252.)

There seems to be little doubt under this doctrine that the District Court of Johnson County, Kansas, acted within its power to modify the Kentucky change of custody order by granting the appellant custody of the children, subject to summer custody which was given to the appellee for the purpose of insuring visitation. If it be said that the Kentucky custody order of July 15, 1970, is invalid for some reason, the original decree of divorce entered in January of 1968, is still in effect. Under that decree, the appellee is entitled to reasonable visitation with his children, and it can hardly be said the Johnson County District Court lacked the power, after hearing all of the evidence in this case, to award custody during the summer months to the appellee so that he could be assured the right to see his children at minimum expense. The record discloses no evidence presented by the appellant in the trial court to show the appellee was in any way unfit to have the custody of his children during the summer months.

Under Kentucky law, a custody decree entered by the courts of Kentucky is always subject to modification by that court, and even if the Kentucky custody order is entitled to full faith and credit in Kansas, it is not entitled to any more credit than in Kentucky. Kentucky cases holding that a decree awarding custody to a parent is always subject to modification are: *Cole v. Cole,* 299 Ky. 319, 185 S. W. 2d 382; *Wright v. Wright,* 305 Ky. 680, 205 S. W. 2d 491 (1947); *Beutel v. Beutel,* 305 Ky. 683, 205 S. W. 2d 489 (1947); *Weightman v. Hamilton,* 261 S. W. 2d 680 (1953).

It is clear the Kansas court had the power to modify the Kentucky order on custody upon a showing of changed circumstances and conditions.

K. S. A. 1970 Supp. 60-1610 now controls what are sufficient jurisdictional bases for the entry of custody and other orders. This

statute enumerates three bases conferring jurisdiction upon the district court to make orders advancing the welfare of minor children. The one with which we are here concerned is the physical presence of the children within the county. Prior to the expanded basis for jurisdiction granted under this statute, and at a time when domicile was thought by the Kansas court to be determinative of jurisdiction, the court had before it on many occasions questions concerning the validity of foreign custody decrees (see *Wear v. Wear*, 130 Kan. 205, 285 Pac. 606; *Woodall v. Alexander*, 107 Kan. 632, 193 Pac. 185; *Kruse v. Kruse*, 150 Kan. 946, 96 P. 2d 849; *Tompkins v. Garlock*, 189 Kan. 425, 370 P. 2d 131; *Price v. Price*, 187 Kan. 292, 356 P. 2d 1013; *White c. White*, 160 Kan. 32, 159 P. 2d 461; *Moloney v. Moloney*, 163 Kan. 597, 185 P. 2d 167; *Leach v. Leach*, 184 Kan. 335, 336 P. 2d 425.

The appellant contends the trial court erred in overruling her motion for judgment on the pleading at the commencement of trial.

K. S. A. 60-207 provides for pleadings used in civil practice. The statute says that "There shall be a petition and an answer; a reply to a counterclaim denominated as such; . . ."

The appellant contends her verified answer to the petition functioned as a counterclaim and, as such, demanded a written reply. No written reply having been filed the appellant moved for judgment on the pleading.

The appellant's allegation of a change in conditions in her answer was neither a counterclaim nor was it denominated as a counterclaim. The trial court specifically found, in overruling the appellant's motion, that changed circumstances was a material issue in the case. The parties to this proceeding had assumed the issue to be present in the early stages of the case. The actual need for a hearing was brought about by the fact that the appellant wished to introduce evidence of changed circumstances. In ruling on the motion the court said:

"From the previous conference on the matters of law, which at least in part were in the nature of pre-trial hearings, the Court has been given to understand that this was a material issue in the case, and although there is no pre-trial order drawn to that effect, it is quite obvious to the Court that that is the situation. The motion is overruled."

K. S. A. 60-1504 provides for a verified answer to the writ of habeas corpus. There appears to be no requirement in this statute

or in any other statute under Article 15 covering habeas corpus procedure which would require the filing of a reply to any portion of the answer. Accordingly, it is held the trial court did not err in overruling the appellant's motion.

The appellant complains of the trial court's rulings on the admissibility of evidence over her objection, the exclusion of her evidence, and refusal to consider answers to requests for admissions lodged by the appellant.

Examination of the record shows the case was tried without objections to hearsay evidence. In the rather limited amount of verbatim testimony included in the record only four of twenty-six objections made by counsel were sustained. Of these objections no less than twelve were for hearsay evidence and of these twelve only one was sustained. At one point in the record counsel for the appellant interjected: "I don't want to be left without an objection to his [appellee's] hearsay if mine is later stricken, so this objection will be continuing to the remarks of the children."

The proceedings herein were to the court and without a jury. The rules of evidence in this context are not as important as they are when a matter is presented to a jury of twelve laymen. It is apparent the court with the assent of counsel followed a very liberal procedure and allowed into evidence most matters presented. This procedure was more beneficial to the appellant than to the appellee because the appellant was thereby permitted to present a large quantity of hearsay evidence concerning the conversation between Mr. Noonan and Mr. Sinnette, the attorney in Kentucky. In any event, the appellant has not shown any prejudice from either the exclusion or admission of any evidence in this case in view of the fact that the appellant is appealing, in effect, from a case which she won.

The appellant asserts for the first time on appeal matters concerning her request for admissions. The record shows that no objection was made in the trial, either before trial, during trial, or upon the motion for a new trial concerning the failure of the appellee to sign the admissions under oath. The appellee testified in person and was cross-examined by the appellant and no issue was presented at the trial level on the point. The appellant cannot be heard to complain where the point is first presented on appeal. Actually, the procedure adopted at the trial level was to accommodate the appellant in shortening the time before trial, and most of what

was contained in the response to the request for admissions involved testimony that was presented directly to the trial court.

The appellant contends the trial court erred in granting the appellee custody during the summer months in the State of Kentucky. This poses the question whether the trial court based its split custody decision upon substantial competent evidence and whether the trial court abused its discretion in entering such decree.

Considering all of the evidence presented to the trial court there is nothing to indicate why the appellee should not be entitled to have summer custody of his children. There has been no evidence presented to show him in any way unfit to have the custody. The appellee has spent considerable money attempting to obtain an order whereby he may visit with his children at minimum expense during the summer in the State of Kentucky where he lives. The children are of suitable age for travel to Kentucky and, in fact, in years past have made summer trips to that state. The appellee has remarried, and the evidence shows that he and his wife are not only fit, but are capable of taking care of the children during the summer months.

A parent who is a proper person is entitled to have access to, and at reasonable times to be allowed to visit and be visited by, a child whose custody has been given to the other parent (*Price v. Price,* 187 Kan. 292, 296, 356 P. 2d 1013). The desirability of such visitation was discussed in the case of *In re Hipple,* 124 Kan. 3, 256 Pac. 1015.

The trial court's order granting the appellee custody during the summer months in the State of Kentucky was based upon the evidence presented and is well within the discretionary power of the trial court.

A related point asserted by the appellant is that the trial court neglected to require the appellee to post a bond as a prerequisite to exercising his custody rights each summer prior to the removal of the children from Kansas to the State of Kentucky. The appellant contends a bond must be required to guarantee the return of the children to Kansas at the conclusion of any visit by them in Kentucky.

This is not a ground for a reversal of the trial court's split custody order. The appellant is free to request the District Court of Johnson County to order the appellee to post a sufficient bond prior to

the release of the children to the appellee for the summer visitation in Kentucky to assure their return to the State of Kansas.

The appellant contends the trial court "erred in finding that there was anything detrimental to the Respondent's children from the presence in her home of Mrs. Nancy Eads" and her children, and in conditioning the appellant's custody of her children on the removal of Nancy Eads and her children from the home.

It would serve no purpose to discuss this point in full. Suffice it to say the appellant and Nancy Eads lived together during the pendency of the original divorce action of the appellant in the State of Kentucky in 1968, and after the divorce was granted. In February of 1968, when Nancy Eads and her husband moved to Leavenworth, Kansas, the appellant and her three children followed in May of 1968, and moved into Eads' home. While this living arrangement existed Major Eads and Nancy divorced and the two women and their children have lived together in the same home with their children until the district court order in this action was entered.

It cannot be said on the record presented the trial court abused the exercise of its power of discretion in requiring the removal of Nancy Eads and her three children from the home of the appellant.

The appellant complains of the trial court's order apportioning costs and of the refusal of the trial court to make an award to her for attorneys fees incurred as a result of this action.

The record discloses the appellant had a take-home pay of $575.00 per month while the appellee's job was described to be a nickel and dime job and highly seasonal, resulting in periods of the year when he would be unemployed.

The taxing of costs in an action of this nature will be reviewed only where it is shown that the trial court abused the exercise of its power of discretion. (See, *Commercial Asphalt, Inc. v. Smith,* 200 Kan. 362, 436 P. 2d 849, Syl. ¶ 6). The trial court heard all the evidence and exercised its discretion in the matter of assessing costs. On this point it cannot be said the trial court erred.

The judgment of the lower court is affirmed.