No. 47,208

MAYNARD C. ANDERSON, *Appellee,* v. PAULA D. ANDERSON, *Appellant.*

(520 P. 2d 1239)

388

Opinion filed April 6, 1974.

*Donald E. Lambdin,* of Lambdin and Kluge, Chartered, argued the cause and was on the brief for the appellant.

*Thomas D. Kitch,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This is a habeas corpus proceeding. It is brought by the father of Anna Laura Anderson, born May 25, 1966. The plaintiff, Mr. Anderson, seeks an order directing the defendant, Mrs. Anderson, to release Anna to him in compliance with the terms of a custody decree entered by a district court in Minnesota. The lawsuit has many of the unfortunate overtones so often present in disputes over custody arising between parents separated by divorce.

Mr. and Mrs. Anderson made their home in Minneapolis, Minnesota. Marital problems developed during their marriage and Mrs. Anderson instituted divorce proceedings in the district court of Hennepin County, Minnesota. Her husband filed a counterclaim and the case was hotly contested. After a trial extending over a period of 6½ days, the Minnesota trial court on January 4, 1971, decreed, so far as material to this case, that the parties be divorced from each other on grounds of cruelty; that the father was a fit and proper person to have custody of Anna and it was Anna's best interest that he be given her custody; that the mother have liberal visitation rights, including overnight visitations on alternate major holidays, on Anna's alternate birthdays and up to four weeks during summer vacations, with Mr. Anderson footing the bill, in specified amounts, for Anna's transportation expenses to her mother's home, should Mrs. Anderson live at a distance. The court also made the following findings with respect to custody:

"The defendant is a fit and proper person to have custody of Anna Laura Anderson and it is in the best interests of Anna that defendant have her custody for the reasons next set forth.

"The plaintiff has given commendably good and loving care and attention to Anna in the past, but may not be able to do so hereafter (although she would try) without a good husband's assistance because the plaintiff is emotionally unstable, she did not contest the custody of, and has not kept contact with, her first two children, she has used baby sitters extensively, she has been unduly severe towards her other child, Bobby, she has not been financially responsible, and she has demonstrated a propensity for having affairs with men which may adversely affect Anna."

In a memorandum prepared shortly after the custody decree was entered, the court added these further words on the subject:

"This decison has been one of the most difficult for me to make in nearly 19 years as a judge. I deeply regret the need for taking custody of Anna from the plaintiff because I know this will cause her much grief. The plaintiff is basically a very personable, affectionate and likeable person, but she does have certain human frailties (and all human beings do have frailties of some type) referred to in the findings which are inherent in her nature and which have caused me to conclude that the best interests of the child require custody be given to the defendant."

Mrs. Anderson appealed from the decision of the Minnesota trial court and on May 19, 1972, the supreme court of that state in a per curiam opinion affirmed the judgment of the district court. In its opinion the supreme court stated:

"We have examined the lengthy record in this case and conclude that the trial court was within the bounds of his discretion in awarding custody of the child to the father. The court has made a conscientious effort to determine what is best for the welfare of the child involved and we are content to leave it there."

On or about August 1, 1972, Mrs. Anderson received permission from the Minnesota district court to bring Anna to Kansas for the four-week summer vacation. She brought the child to the home of her parents in Sedgwick County where, on August 24, 1972, before her visitation rights had expired, she filed an action in the district court of that county alleging a change of circumstances occurring after the Minnesota decree was entered, and praying that she be awarded custody. On the following day Mrs. Anderson moved for an order of temporary custody and on September 5, 1972, by which time visitation rights had expired, the Sedgwick district court issued an *ex parte* order giving custody of Anna to her mother pending trial or until further order.

On September 13, 1972, Mr. Anderson filed a motion to dismiss the proceedings pending in the Sedgwick district court, setting up the Minnesota decree and alleging that Mrs. Anderson was in violation thereof; that she had committed a fraud upon the Minnesota court; that she was engaging in forum shopping; and that the exercise of jurisdiction by the Sedgwick district court would be improper. This motion was heard and overruled on September 15, 1972, and the temporary order of custody was continued in effect.

The present action was commenced against Mrs. Anderson on October 18, 1972. It was filed in the district court of Butler County, inasmuch as Anna and her mother had moved to El Dorado. Here-

after we shall refer to the contending parties either as plaintiff and defendant or, as heretofore, as Mr. Anderson and Mrs. Anderson.

In his petition for a writ of habeas corpus Mr. Anderson set out the Minnesota custody order, together with the supreme court's per curiam opinion affirming the same, and alleged that the defendant was violating the provisions of the Minnesota decree by retaining Anna after her visitation rights had expired.

Mrs. Anderson filed an answer, in which she set forth the order of the Sedgwick district court granting temporary custody to her. She alleged that since the Sedgwick court had obtained jurisdiction of the matter the case should be allowed to proceed to trial in Sedgwick County on the merits and, further, that the plaintiff had other remedies which should be exhausted before a writ was issued.

On October 26, 1972, Judge Page W. Benson conducted a hearing in the habeas action at which the plaintiff appeared by counsel and the defendant appeared personally and by counsel. At the conclusion of the hearing the trial court issued the writ. The following day Mrs. Anderson filed a motion for rehearing in which she stated that by inadvertence she had not introduced evidence concerning a change of circumstances occurring after the Minnesota order was entered. Judge Benson found that a rehearing should be granted and on November 10, 1972, proceeded to reconsider his previous decision. At this time the defendant requested the court to continue the habeas corpus proceeding until the issues were determined in the case before the Sedgwick district court or in the alternative to permit her to introduce evidence of changed circumstances. The trial court overruled both requests, following which the defendant proffered evidence to show a change of circumstances.

Mrs. Anderson appealed from the adverse judgment entered against her by the Butler district court, and executed a supersedeas bond set by the court to stay execution pending her appeal. On March 14, 1973, the Sedgwick district court conducted another hearing in the action pending there. At this hearing the Sedgwick court found that it had jurisdiction; that the evidence showed a change of circumstances but that a full evidentiary hearing should be held after the appeal from the Butler County judgment was determined; and in the meantime the temporary custody of Anna should be confirmed in Mrs. Anderson.

In granting Mr. Anderson's petition for a writ, and in directing Mrs. Anderson to return Anna to the custody of her father, the

Butler district court found that it had jurisdiction of the parties to determine the relief prayed for; that full faith and credit should be given to the judgment of the District Court of Hennepin County, Minnesota, as affirmed by the Supreme Court of that state; and that Mrs. Anderson should not be permitted to introduce evidence showing a change of circumstances since she had not entered the court with clean hands in accordance with the requirement mandated in *Perrenoud v. Perrenoud,* 206 Kan. 559, 480 P. 2d 749. The court based its finding of unclean hands on the following factors: (1) That Mrs. Anderson relied on the Minnesota decree when she obtained custody of Anna on a temporary basis in the summer of 1972; (2) that she elected to leave the jurisdiction of the Minnesota district court only when she exhausted her right of appeal and failed to obtain the relief she sought; (3) that she could easily have commenced proceedings for change of custody in Minnesota a month before commencing them in Kansas; (4) that commencing proceedings in Minnesota would have permitted the judge who heard the divorce action to determine whether there had been a change of circumstances; (5) that defendant has abided by the Minnesota decree only when it was to her advantage to do so, and has ignored the decree when dissatisfied with it; and (6) that the issue raised by Mrs. Anderson had recently been resolved in the Minnesota courts.

For her first point Mrs. Anderson challenges the jurisdiction of the Butler district court on the ground that jurisdiction had already been established over the parties, over the issues and over the minor child by the District Court of Sedgwick County and, secondly, she contends the court abused its discretion in not continuing the proceedings pending before it until after the issues had been passed on in Sedgwick County. As to these contentions it is appropriate to point out that K. S. A. 60-1501 provides in pertinent part that any party restrained of his liberty, or any parent, for the protection of an infant physically present in this state, may prosecute a writ of habeas corpus *in the district court of the county in which the restraint is taking place.* The restraint in this case was occurring in Butler County, where Anna and her mother were living. A similar question going to jurisdiction was considered in *Love v. Love,* 188 Kan. 185, 360 P. 2d 1061, a case decided prior to the enactment of K. S. A. 60-1501. In that case, the parents of three small children instituted habeas corpus proceedings in John-

son County to obtain custody from an uncle who they alleged was unlawfully detaining the youngsters in Leavenworth County. This court said in the opinion that the question of jurisdiction really turned on a question of venue, and we pointed to the general rule that a court has no authority to issue a writ of habeas corpus directed to a person detained outside its territorial jurisdiction, but that application for the writ must be made within the district where the detention occurs. The *Love* decision is capsulized in Syllabus 2:

"In a child custody case a proceeding in habeas corpus is in the nature of a proceeding *in rem*, the child being the thing concerned, and the application for a writ must be brought in the judicial district where the alleged illegal detention occurs."

Anna was physically present and being detained in Butler County, within the bounds of the Thirteenth Judicial District. Venue properly lay in Butler County. It is provided in K. S. A. 1973 Supp. 60-1610 (*a*) (*i*) that a court shall always have jurisdiction to make orders for the custody of a minor child if the child be physically present in the county.

Under the principle of comity the Butler district court might, we presume, have deferred taking action on plaintiff's application for the writ until after the District Court of Sedgwick County had conducted a final hearing, but it was not required to give priority and we discern no abuse of discretion when it proceeded to hear its own lawsuit expeditiously. While we look with no great favor on multiple litigation or legal maneuvering for position on the part of litigants (see *Taber v. Taber*, 213 Kan. 453, 456, 516 P. 2d 987) we are aware of no legal impediment to Judge Benson's entertaining the habeas corpus action. The Butler district court had jurisdiction over the parties, over the subject matter and over the child, whether or not a suit for change of custody was pending elsewhere. The two actions were separate and distinct lawsuits and the question of priority of time in filing was immaterial. (*Jeffers v. Jeffers*, 181 Kan. 515, 313 P. 2d 233; *Kraus v. Kraus*, 171 Kan. 254, 232 P. 2d 233; *Taber v. Taber*, supra.)

Mrs. Anderson's major thrust on appeal, however, is encompassed within the argument that the trial court erred (1) in giving full faith and credit to the Minnesota judgment and (2) in refusing to hear evidence as to an alleged change of circumstances.

K. S. A. 1973 Supp. 60-1611 provides in pertinent part:

"A judgment or decree of divorce rendered in any other state or territory of the United States, in conformity with the laws thereof, shall be given full faith and credit in this state. . . ."

In *Wear v. Wear,* 130 Kan. 205, 285 Pac. 606, this court, in considering a predecessor statute, R. S. 1923, 60-1518, held:

"It is the policy of the law of this state to give to a decree of divorce rendered in another state the same force and effect, in so far as that can be done, as though the decree had been rendered by a court of this state." (Syl. ¶ 2.)

This general principle has been echoed in subsequent cases. (*Moloney v. Moloney,* 163 Kan. 597, 185 P. 2d 167; *Fincham v. Fincham,* 174 Kan. 199, 207, 255 P. 2d 1018; *King v. King,* 185 Kan. 742, 748, 347 P. 2d 381.) In the recent case of *Perrenoud v. Perrenoud,* supra, the court held:

"It is the settled policy of this state to recognize decrees of divorce of sister states as being effectual to terminate the marital relation of the parties where such decree is procured in harmony with the laws of the state where it is rendered." (Syl. ¶ 3.)

However, full faith and credit has only limited application to a child custody decree, it being inherent in the nature of such a decree that it is not final or conclusive but is always subject to the right of the parties to show a subsequent change of circumstances and conditions. (*In re Bort,* & c., 25 Kan. 308; *Wear v Wear,* supra; *Price v. Price,* 187 Kan. 292, 356 P. 2d 1013; *Moloney v. Moloney,* 167 Kan. 444, 206 P. 2d 1076; *White v. White,* 160 Kan. 32, 159 P. 2d 461; *In re Thompson,* 178 Kan. 1, 282 P. 2d 440; *Perrenoud v. Perrenoud,* supra; *Miracle v. Miracle,* 208 Kan. 168, 490 P. 2d 638.) In *Lyerla v. Lyerla,* 195 Kan. 259, 403 P. 2d 989, it was held:

"An order awarding custody of a minor child is *res judicata* only as to matters as they existed when the order was made, and does not bar later inquiry into the issue of custody where circumstances have changed." (Syl. ¶ 3.)

Mrs. Anderson relies particularly on the decision in *Miracle* in challenging the trial court's judgment. In brief, the facts in that case were as follows: Mr. and Mrs. Miracle were divorced in Kentucky. The mother was given custody of three minor daughters, subject to summer visitation rights. After the divorce Mrs. Miracle moved to Kansas taking the girls with her. At a later date the Kentucky court changed the order and granted custody of the girls to their father. The order changing custody was made in the absence of Mrs. Miracle and there was a dispute over whether she had been given notice. Be that as it may, Mr. Miracle journeyed

to Kansas and on the basis of the Kentucky order commenced habeas corpus proceedings to obtain physical custody of the children.

The trial court, when hearing the application for the writ, permitted Mrs. Miracle to introduce evidence of a change of circumstances occurring subsequent to the Kentucky decree placing custody in Mr. Miracle. At the conclusion of the evidence the trial court found that a change of conditions had taken place, and that custody should remain with the mother, subject to summer visitation rights.

On appeal to this court, we affirmed, holding that a habeas corpus proceeding is a proper vehicle for determining questions relating to child custody; that the paramount concern in a custody hearing is the welfare of the child; that in the interest of the welfare of minor children physically present in Kansas, courts of this state have jurisdiction over their care and custody, although the court of a sister state has "concurrent jurisdiction"; and that a child custody decree is inherently not final or conclusive but is subject to right of the parties to show a change of conditions and circumstances. (See Syllabi 2, 3, 4 and 5.)

The *Miracle* opinion reflects a long line of decisions expressing the concern this court has had for the welfare and well-being of minor children. However, the *Miracle* decision is not of controlling force and effect in the instant case because of the marked dissimilarity in the factual backgrounds of the two cases, a matter on which we will comment later.

The Butler district court found that Mrs. Anderson had not come into court with clean hands and it accordingly determined that under the rationale of *Perrenoud v. Perrenoud,* supra, the writ should be granted.

A synopsis of the *Perrenoud* case, which has many similarities to the case at hand, should prove helpful. Daniel and Sandra Perrenoud lived in Kansas City, Missouri. They had two small daughters. Following a separation Daniel moved to California. The girls were placed with maternal relatives who later took them to Daniel. After a year of separation Daniel filed divorce proceedings in California. Sandra failed to appear. In due time Daniel was granted a divorce and was awarded custody of the two children. Six months later Sandra appeared on the scene and filed a motion for change of custody, or in the alternative for rights of visitation. The California court made an interim order permitting

Sandra to take the children to Johnson County for the summer, but directed they be returned before August 27. After returning to Kansas with the children, Sandra proceeded to file an action for divorce in the District Court of Wyandotte County and obtained, at that time, a temporary order of custody. Upon being apprised of this state of affairs, Daniel hastened to Kansas and applied for a writ of habeas corpus in Johnson County where the children were then living. The Johnson district court granted the writ, invoking the doctrine of clean hands and giving full faith and credit to the California decree. Sandra appealed from the decision. Subsequently she obtained a divorce from the Wyandotte district court and was awarded custody of the children at the same time. Daniel appealed from that judgment. The two appeals were consolidated for hearing in this court.

In essence this court held on appeal that the California divorce decree was valid and entitled to full faith and credit under K. S. A. 1970 (now 1973) Supp. 60-1611 as dissolving the marriage relationship; that the Wyandotte district court had no jurisdiction over the subject matter of divorce, the marriage having previously been dissolved by decree of the California court, nor did it have jurisdiction to enter ancillary or final orders in connection with the divorce action. It was also held that the Johnson district court did not err, under all the surrounding facts and circumstances, in declining to hear evidence of changed conditions and in extending comity and full faith and credit to the California decree.

We shall not engage in an extended or in depth discussion of the clean hands doctrine for it was fully delineated by Justice (now Chief Justice) Fatzer in authoring the *Perrenoud* opinion. However, we should like to quote the following passage from that decision as being especially germane to the situation at hand:

"It is apparent that, on the basis of our statutes forming the basis of our 'free discretion' rule and a rejection of 'full faith and credit' or 'comity' with respect to recognition of child custody decrees rendered by a court of a sister state, the door is open wide, so to speak, to 'forum shopping' by scheming parents who seek a redetermination of their custodial rights in a more favorable jurisdiction, or seek to relitigate the question in courts of other states based upon an allegation of changed circumstances and conditions. Some decisions point out that such abuse may be prevented by the imposition of the 'clean hands' doctrine which prevents a parent from invoking the court's jurisdiction if he is a fugitive from the state issuing such decree, or has made misrepresentations in some way to obtain the custody of the children, or is flaunting a foreign proceeding or decree. The doctrine seems to be

making advancement in family law and is being relied upon in some jurisdictions where the circumstances merit its application. In cases of this character, the court is dealing with a matter equitable in nature where the child's welfare is the paramount consideration, and it is a familiar equitable maxim that '[h]e who comes into equity must come in with clean hands.' (*Price v. Price,* supra.)

"The 'clean hands' doctrine was formulated and approved in *Leathers v. Leathers,* [162 C. A. 2d 768, 328 P. 2d 853], where it was held:

"'Courts of this state, by invoking the doctrine of "clean hands," will recognize and enforce custody decrees of a sister state, without reexamination of their merits and regardless of a change of conditions, where there is misconduct or malfeasance on the part of the parent seeking such reexamination.' (Syl. ¶ 6.)" (pp. 577, 578.)

As gleaned from this record the facts fall neatly within the pattern outlined in *Perrenoud:* After a lengthy hearing of the Anderson divorce case, in which the custody of Anna was obviously litigated, the Minnesota trial court awarded custody to Mr. Anderson, carefully spelling out Mrs. Anderson's rights of visitation and directing the father to pay "visitation alimony" in various graduated amounts to help enable Anna's mother to use her visitation rights; on appeal to the Minnesota Supreme Court the trial court's judgment was affirmed; approximately two months after the affirmance Mrs. Anderson received permission to bring Anna to Kansas for the four-weeks summer vacation; before the visitation period had expired, Mrs. Anderson brought proceedings in the Sedgwick district court seeking the permanent custody of Anna on the basis of an alleged change of circumstances. We believe the trial court in this instance was completely justified in refusing to hear evidence as to a change in circumstances or conditions and in applying the ancient maxim: He Who Comes into Equity Must Come with Clean Hands. (See 2 Pomeroy's Equity Jurisprudence, § 363, p. 8 [Fifth Ed. S. Symons 1941]; 1 Bouvier's Law Dictionary, Third Revision, "Equity", p. 1063; 1 Story's Equity on Jurisprudence, § 98, p. 98 [14th Ed. W. Lyon 1918].)

It is clear that Mrs. Anderson, while still in Minnesota, could have applied to the Minnesota court, which had heard and was familiar with the case, for a change of custody on the basis of changed conditions. She failed to do so. Instead she received permission to bring Anna to Kansas where she promptly instituted change of custody proceedings in the courts of this state. Her conduct smacks of "forum shopping" in its baldest form. As was so aptly put in *Perrenoud:*

". . . The 'changed circumstances' rule does not permit a parent to go from one state to another relitigating issues which have been very recently resolved in another jurisdiction. *(Perry v. Superior Court*, [7 Cal. App. 3d 236, 86 Cal. Rptr. 607].)" (p. 580.)

This case is clearly distinguishable from *Miracle v. Miracle,* supra, on which the defendant so strongly relies. At the time Mrs. Miracle brought the children to Kansas to make their home, she was in possession of an order of the Kentucky court, granting her the rights of custody. She had not removed the children from Kentucky surreptitiously or in violation of any order made by the court in Kentucky. Mr. Miracle later obtained a change of custody order from the Kentucky court, in the absence of Mrs. Miracle who denied receiving notice, and it was he who came to Kansas and instituted habeas corpus proceedings. Only then did Mrs. Miracle offer evidence of changed circumstances, which under our decisions she was entitled to do. *(Moloney v. Moloney,* supra; *White v. White,* supra; *Price v. Price,* supra.) There were no unclean hands; no forum shopping was involved; no estoppel was asserted.

In conclusion, and for the reasons set forth in this opinion, we are constrained to hold that the Butler County District Court did not err in granting Mr. Anderson's petition for writ of habeas corpus.

The judgment is affirmed.